[No. S005684. Jan. 30, 1989.]

SAMUEL BROWN RIDGE, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Tom Low for Petitioner.

Diana C. Yu, Truitt A. Richey, Jr., Richard J. Zanassi and Lawrence Yee for Respondent.

OPINION

**THE COURT.**—This is a proceeding to review the recommendation of the Review Department of the State Bar Court that petitioner Samuel Brown Ridge be suspended from the practice of law for three years, that the order of suspension be stayed, and that he be placed on probation for three years on conditions including two years' actual suspension.[1] Petitioner was admitted to the practice of law in 1974 and has no prior disciplinary record. The present disciplinary proceedings arise out of his conduct in three separate matters.

---

[1] The recommended conditions of probation also specified that petitioner complete proceedings in Estate of Ridge, Contra Costa County Superior Court No. 54005 and provide satisfactory evidence thereof to the State Bar. They required that petitioner: abstain from the use of intoxicants, participate in the State Bar's pilot program on alcohol abuse, comply with the State Bar Act and Rules of Professional Conduct, file quarterly reports certifying that he has complied therewith and that he has abstained from the use of intoxicants, cooperate with a probation monitor, keep the State Bar apprised of his current address and respond promptly and truthfully to inquiries from the State Bar regarding compliance with these conditions. The review department further recommended that he be required to take and pass the Professional Responsibility Examination prior to the end of his period of actual suspension and that he comply with rule 955 of the California Rules of Court.

The review department vote was 10 to 3, the dissenters being of the opinion that the discipline was excessive.

*The Camarillo Matter*

On April 3, 1984, petitioner appeared on behalf of Dean Camarillo at a preliminary hearing before Judge J. Thomas Seibly in San Joaquin County Municipal Court. In the midst of the hearing, concerned that petitioner was intoxicated and hence was not properly representing his client, Judge Seibly called counsel into chambers. He noted petitioner's speech was slurred and exhibits kept falling out of petitioner's hands. While initially protesting that he had only had one or two beers with lunch,[2] petitioner agreed to take an Intoxilizer test which promptly showed a blood-alcohol level of .17 percent. The court expressed the opinion that petitioner's condition constituted contempt of court and concluded that despite the presence of several witnesses, proceedings would have to be continued.

On the continued date, May 2, the preliminary hearing was concluded and the court then returned to the question of contempt. In addition to its previous findings, it noted petitioner had on April 3 behaved very aggressively toward counsel and witnesses and that the court had noted the odor of alcohol. It felt petitioner's conduct had been an affront to the dignity of the court and expressed frank disbelief that petitioner's conduct and his blood-alcohol level could be attributed to two beers. Petitioner was held in contempt and sentenced to five days in the county jail or fifty hours of community service.

At his State Bar hearing, petitioner acknowledged he had not been truthful with Judge Seibly when he claimed to have had only two beers and claimed he had consumed three, four or five. He also acknowledged that he had not completed his community service and as a consequence had served two days in county jail. Finally, petitioner claimed that, realizing he was an alcoholic, he had entered into counseling with a person from Valley Community Counseling Center and was also taking the medication Antabuse.

The review department, while largely adopting the referee's findings with respect to this incident, deleted the finding regarding petitioner's voluntarily entering an alcohol rehabilitation program and taking other steps to become alcohol free. Instead it found that by appearing in court intoxicated, petitioner had violated his oath and duties as an attorney and failed to maintain the respect due the courts. (Bus. & Prof. Code, § 6068.) The review department has explained that this change is based on petitioner's admissions at the review department hearing that he had ended his therapy and medication as he considered himself cured. The review department concluded

---

[2] Petitioner claimed his slurred speech was caused by dentures and that a bad case of flu caused him to drop the exhibits.

petitioner's asserted personal commitment to rehabilitation was insufficient to protect the public. It further found that petitioner's lack of candor with Judge Seibly regarding the amount of alcohol he consumed constituted a matter in aggravation.

Petitioner objects to deletion of the hearing panel's finding and urges that his reason for terminating treatment was his successful completion of the alcohol program. He thus urges that the review department's findings with respect to continued danger to the public are without foundation.

*The Estate of Ridge*

Petitioner's father died testate in 1979 leaving his estate in equal parts to petitioner and petitioner's brother, David Ridge. The will was admitted to probate (Estate of Ridge, Contra Costa Superior Court No. 54005) and petitioner was appointed executor on November 5, 1979. By the end of December 1980, the estate's assets had been reduced to cash in excess of $80,000, the exact amount being uncertain since petitioner's records are incomplete, unavailable, or missing.

As of 1987, a final accounting had apparently still not been filed with the probate court nor had final distribution of estate assets been made.[3] Sometime in the early years of the estate, petitioner did make substantial distributions, totalling approximately $24,000 to his brother and $33,050 to himself. Of the remaining sums, some $14,000 belonging to the estate had been held in a trust account; but in 1982, petitioner removed funds from that account, converted them to cash, and kept the cash in a bag in his office safe. He later converted the funds into cashier's checks payable to himself and additionally purchased 100 ounces of silver bullion, also kept in his possession.[4] Petitioner explained that he had removed funds from the trust account to avoid possible attachment by the State Franchise Tax Board as a result of a dispute over tax issues unrelated to the estate.

Over a 6-year period, petitioner's brother requested an accounting of estate funds on 10 or 12 occasions, but no accurate, formal accounting was forthcoming. An inventory in August 1980 proved inaccurate and an inheritance tax filed in December 1985 was returned for correction due to inconsistencies with other records. On the suggestion of the hearing panel in the current State Bar proceeding, petitioner in July of 1986 prepared an accounting, but that too apparently remained incomplete.

---

[3] We are informed by the Contra Costa County Superior Court Clerk's office that a judgment of final distribution was entered June 16, 1988.

[4] The silver was apparently purchased with the consent of David Ridge but without the approval of the probate court.

Petitioner kept no separate, complete disbursement records for the estate but considered receipts and cancelled checks adequate. Unfortunately, many of these records became lost after petitioner allegedly stored them during his move from Marin County to Manteca, and the storage company lost or converted them.

On the basis of these facts, the hearing panel found petitioner: had commingled funds, had failed to take all steps necessary as executor to keep an accurate accounting of assets and close the estate, and had caused the estate financial detriment in lost interest and possible tax penalties. It concluded, however, that evidence was insufficient to establish actual misappropriation of estate funds or the commission of acts involving moral turpitude and dishonesty.

The review department deleted the finding of no moral turpitude and found that petitioner had violated rule 8-101 of the Rules of Professional Conduct of the State Bar by converting estate funds into cashier's checks and bullion, failing to make timely distribution to beneficiaries, failing to maintain assets in an identifiable trust account, and failing to account for trust assets. (Rule 8-101(A), (B)(3), (4).) The review department concluded that: "Respondent's commingling of funds, failure to account for trust funds and loss of accounting records in the context of his admitted intent to avoid creditors, is a matter of dishonesty and moral turpitude in violation of Business and Professions Code section 6106." Finally, the review department also concluded that by failing to close the estate for seven years, petitioner had violated rules 6-101 and 2-111 of the Rules of Professional Conduct and his oath and duties as an attorney in violation of Business and Professions Code section 6068.

Petitioner objects to the review department's deletion of the hearing panel's finding of no moral turpitude. He urges that removing the remaining estate assets from the trust account simply protected his brother's share of the estate from improper seizure in petitioner's unrelated state tax dispute. While he admits his handling of assets may have been "foolish and wrong," he insists moral turpitude was not involved. He defends his decision to treat receipts and cancelled checks as the sole estate records and blames the storage company for their loss.

*The Moyer Matter*

Around July of 1981, petitioner was retained by Larry Moyer to pursue actions concerning the destruction of Moyer's rented studio/residence pursuant to a permit issued by the City of Sausalito. Moyer had already filed an action entitled Moyer v. City of Sausalito et al., Marin County Superior

Court No. 103006. In August 1981, petitioner filed Moyer v. Boscoe et al., Marin County Superior Court No. 104129, against persons who owned the property or were involved in carrying out the permit.

In the *Sausalito* action, petitioner filed an amended and, in December 1982, a second amended complaint. Defendants demurred, but petitioner filed no opposition nor did he appear at the hearing despite extensions of time to permit his response. Defendants' demurrer was accordingly sustained without leave to amend and a judgment of dismissal entered. Petitioner did not notify Moyer of this result.

In the *Boscoe* action, petitioner filed a complaint in August 1981, amended in February 1982. Defendants moved to strike portions of the complaint, but petitioner, despite continuances to allow him to respond, did not file a responsive pleading and did not appear at the hearing. The motion to strike was granted in October 1982, but again petitioner did not notify Moyer. Thereafter petitioner scheduled a deposition for one witness, continued the deposition, and ultimately never rescheduled it prior to being substituted out as counsel in December 1983. Served with interrogatories from defendants, petitioner discussed the interrogatories with Moyer but failed to prepare and file answers.

Petitioner largely failed to communicate with Moyer from late 1982 through mid-1983, despite Moyer's repeated attempts to contact him. In part, this may have been attributable to petitioner moving his office, without notice to Moyer, from Sausalito to Mill Valley. While he does not contest the facts of the Moyer matter here, at the State Bar hearing petitioner repeatedly blamed the client for any inability to reach petitioner and claimed several efforts to contact Moyer had been made. In contrast to petitioner's suggestion that he did not oppose defense actions in the Moyer cases because there were no grounds to oppose them, Moyer testified that on the rare occasions he was able to reach petitioner, petitioner did not express doubt as to the validity of the actions.

Finally, in 1983 Moyer searched the records at the Marin County Superior Court Clerk's office and learned the true status of his cases. After again having great difficulty contacting petitioner, Moyer sought other counsel. As might be expected at this point, it took several months for Moyer to obtain his case files which even then were only turned over after Moyer saw an eviction notice on petitioner's office and directly contacted petitioner's landlord.

The hearing panel and review department, on these facts, found petitioner's actions demonstrated failure to use reasonable diligence and skill in

accomplishing the purposes for which petitioner had been employed. (See Rules Prof. Conduct, rules 2-111(A), 6-101; Bus. & Prof. Code, § 6068.) Petitioner raises no specific objections to these findings.

### DISCUSSION

■ We turn first to the Camarillo matter and petitioner's contention that the review department's findings with respect to his danger to the public were without foundation. We rely heavily on the findings of the State Bar Court in disciplinary matters, and the burden of proving that their findings are unsupported by the evidence must be borne by petitioner. (*Segal* v. *State Bar* (1988) 44 Cal.3d 1077, 1081 [245 Cal.Rptr. 404, 751 P.2d 463]; *Galardi* v. *State Bar* (1987) 43 Cal.3d 683, 689 [238 Cal.Rptr. 774, 739 P.2d 134]; *Trousil* v. *State Bar* (1985) 38 Cal.3d 337, 341 [211 Cal.Rptr. 525, 695 P.2d 1066].) We conclude that the foregoing findings are amply supported in this case.

Clearly petitioner showed disrespect to the court by appearing at Camarillo's preliminary hearing under the influence of alcohol and attempting to conduct Camarillo's defense in that condition. (Bus. & Prof. Code, § 6068.) While a problem with alcoholism may explain his conduct, it does not excuse it. (See *In re Vaughn* (1985) 38 Cal.3d 614, 619 [213 Cal.Rptr. 583, 698 P.2d 651].) Petitioner protests that he has obtained treatment and successfully completed a program to control his alcoholism. We have said that recognition and treatment of an alcohol problem is laudable. (*Tarver* v. *State Bar* (1984) 37 Cal.3d 122, 134 [207 Cal.Rptr. 302, 688 P.2d 911].) But the purpose of disciplinary proceedings is protection of the public, preservation of confidence in the legal profession, and maintenance of high professional standards. (*Mepham* v. *State Bar* (1986) 42 Cal.3d 943, 948 [232 Cal.Rptr. 152, 728 P.2d 222]; *Franklin* v. *State Bar* (1986) 41 Cal.3d 700, 709 [224 Cal.Rptr. 738, 715 P.2d 699]; see also Rules Proc. of State Bar, div. V, Standards for Atty. Sanctions for Prof. Misconduct, std. 1.3 [hereafter Standards].) For that reason, the review department is entitled to require more than the attorney's own recognition of his alcohol problem and uncorroborated claim of rehabilitation. (*Gary* v. *State Bar* (1988) 44 Cal.3d 820, 828 [244 Cal.Rptr. 482, 749 P.2d 1336]; *Chasteen* v. *State Bar* (1985) 40 Cal.3d 586, 594 [220 Cal.Rptr. 842, 709 P.2d 861] [conc. & dis. opn. by Lucas, J.].) It is entitled to require that petitioner show a meaningful and sustained period of successful rehabilitation, a solid pattern of recovery restoring confidence that petitioner's representation of future clients and his future court appearances would not be marred by the conduct that occurred in this case. (*Gary, supra,* 44 Cal.3d at p. 828; *Rosenthal* v. *State Bar* (1987) 43 Cal.3d 658, 664 [238 Cal.Rptr. 394, 738 P.2d 740]; *Mepham, supra,* 42 Cal.3d at pp. 948-949.)

In the present case, while petitioner was under counseling and medical treatment at the time of the hearing before the referee, he considered himself cured and had withdrawn from treatment by the time of the review department hearing. Thus, he did not show a meaningful and sustained period of rehabilitation and the review department remained justifiably concerned about the future conduct of his practice. The review department was also entitled to consider, as aggravating, petitioner's lack of candor with Judge Seibly in not acknowledging his intoxication or the amount of alcohol ingested. We conclude that the review department's findings with respect to the Camarillo matter and the recommendation that petitioner be required to abstain from the use of intoxicants and participate in the State Bar's pilot program on alcohol abuse are fully supported by the evidence.

We turn next to petitioner's mismanagement of the estate of his father and to petitioner's claims that his handling of estate assets did not involve moral turpitude. ■ An attorney's mishandling of an estate so that probate is unusually prolonged and the beneficiaries disadvantaged, inter alia, by delay in distribution of the assets, calls for disciplinary action. (See generally *Butler* v. *State Bar* (1986) 42 Cal.3d 323 [228 Cal.Rptr. 499, 721 P.2d 585]; *Doyle* v. *State Bar* (1976) 15 Cal.3d 973 [126 Cal.Rptr. 801, 544 P.2d 937]; Annot., Attorney's Delay in Handling Decedent's Estate as Ground for Disciplinary Action (1983) 21 A.L.R.4th 75.) The fact that an attorney may be acting as executor rather than attorney for the estate does not insulate his conduct from censure. (See Annot., Conduct of Attorney in Capacity of Executor or Administrator of Decedent's Estate as Ground for Disciplinary Action (1979) 92 A.L.R.3d 655.)

We have held that: "An attorney who accepts the responsibility of a fiduciary nature is held to the high standards of the legal profession whether or not he acts in his capacity of an attorney." (*Worth* v. *State Bar* (1976) 17 Cal.3d 337, 341 [130 Cal.Rptr. 712, 551 P.2d 16]; and see Bus. & Prof. Code, § 6106.) Whether or not the persons to whom he owes a fiduciary duty are clients, he must maintain proper books and records and not commingle funds. (*Ibid.*; and see *Segal, supra,* 44 Cal.3d at p. 1086; *Marquette* v. *State Bar* (1988) 44 Cal.3d 253, 262 [242 Cal.Rptr. 886, 746 P.2d 1289]; *Galardi* v. *State Bar, supra,* 43 Cal.3d 683, 691; cf. *Hunniecutt* v. *State Bar* (1988) 44 Cal.3d 362, 370-371 [243 Cal.Rptr. 699, 748 P.2d 1161] [dealings with former client].) Furthermore, failure to provide proper accounting for entrusted funds is cause for discipline whether or not financial loss has ultimately occurred. (See *McCray* v. *State Bar* (1985) 38 Cal.3d 257, 270 [211 Cal.Rptr. 691, 696 P.2d 83]; *Fitzsimmons* v. *State Bar* (1983) 34 Cal.3d 327, 331-332 [193 Cal.Rptr. 896, 667 P.2d 700].)

■ In the present case, petitioner was appointed executor in November 1979, yet by 1987, no final distribution had been made. Such delay and

petitioner's attendant refusal to provide an accurate accounting of assets despite his brother's repeated requests are unconscionable and warrant appropriate discipline notwithstanding petitioner's alcoholism or difficulty in dealing with his father's death. Clearly, he also commingled funds; by placing his own and his brother's remaining share of the estate in his office safe in the form of cash and later in the form of cashier's checks and bullion, he at best subjected his brother's share of the estate to an unnecessary risk of loss. The fact that no actual loss may have occurred does not excuse such conduct. (*Athearn* v. *State Bar* (1977) 20 Cal.3d 232, 236 [142 Cal.Rptr. 171, 571 P.2d 628].)

■ We decline, however, to adopt the State Bar's finding that petitioner's commingling of funds, failure to account for trust funds, loss of accounting records and admitted intent to avoid creditors are, in this case, matters of dishonesty and moral turpitude. Although we ordinarily give the findings of the State Bar great weight, they are not binding on this court; it is well established that this court has a duty to independently review the evidence, pass upon its sufficiency, and resolve all reasonable doubts in favor of the attorney. (*Kapelus* v. *State Bar* (1987) 44 Cal.3d 179, 193 [242 Cal.Rptr. 196, 745 P.2d 917]; *Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 12 [206 Cal.Rptr. 373, 686 P.2d 1177].) We agree with petitioner that the review department's findings of moral turpitude and dishonesty are not supported by the record.

Petitioner's grossly negligent mishandling of his father's estate largely occurred in the aftermath of several emotionally traumatic events—the death of his father, the additional death of his best friend shortly thereafter, and his divorce—and while his ability to manage daily professional and personal tasks was seriously impaired as the result of protracted uncontrolled alcoholism. There is also evidence in the record that petitioner's failure to produce an accurate accounting may in part have been attributable to his storage company's loss or conversion of essential records. Although we do not find these factors to be excuses for petitioner's misconduct, we are unwilling to characterize his deficiencies, in the absence of any finding of outright misappropriation, as manifesting dishonesty or moral turpitude.

Furthermore, petitioner explained that he had withdrawn estate funds from the trust account to protect his brother's share of the estate from unwarranted seizure by the State Franchise Tax Board. While we are concerned about petitioner's apparent intent to avoid creditors (compare *Coppock* v. *State Bar* (1988) 44 Cal.3d 665, 678-679 [244 Cal.Rptr. 462, 749 P.2d 1317]), our review of the record persuades us that petitioner's unusual handling of the assets did not reflect dishonesty or deception but emanated

from a genuine belief that his brother's share of the estate would be in jeopardy if left in the trust account, and from a misguided but sincere effort to preserve estate assets. We therefore believe, as we did in *Lawhorn v. State Bar* (1987) 43 Cal.3d 1357 [240 Cal.Rptr. 848, 743 P.2d 908] (cash withdrawn from trust account stored in "stash box" in attorney's refrigerator), that although petitioner may have been "foolish and was definitely wrong in proceeding as he did . . . we are not convinced that he is venal." (*Id.* at p. 1367.) As in *Lawhorn,* there is no evidence in the record that petitioner used any of the $14,000 in cash for his personal needs or intended to permanently deprive his brother or the estate of the entrusted funds whether in the form of cash, cashier's checks or silver bullion. Indeed, the bullion was purchased with the consent and approval of petitioner's brother, the only other beneficiary under the will. Accordingly, we conclude that contrary to the finding of the review department, petitioner's conduct as executor did not involve dishonesty or moral turpitude.

Finally, we consider the Moyer matter.  ■  It is serious misconduct for an attorney to wilfully fail to perform the legal services for which he has been retained, to wilfully fail to communicate with a client, and knowingly to misrepresent to a client the status of his case. (*McMorris v. State Bar* (1983) 35 Cal.3d 77, 85 [196 Cal.Rptr. 841, 672 P.2d 431]; *Martin v. State Bar* (1978) 20 Cal.3d 717, 722 [144 Cal.Rptr. 214, 575 P.2d 757]; and see rule 6-101, Rules Prof. Conduct.) If an attorney is essentially withdrawing from employment, he is obligated to give due notice to the client and take steps to avoid foreseeable prejudice, steps which include delivering to the client in a timely manner all papers and property to which the client is entitled. (Rule 2-111(A)(2), Rules Prof. Conduct.)

Here, while Moyer may not always have been easy to contact, there is no excuse for prolonged failure to respond to his attempts to communicate with petitioner. It is outrageous that a client must ·personally search the public record to try to learn the status of his cases or approach an attorney's landlord in an attempt to retrieve his case files.

■  Petitioner urges upon us various mitigating factors including lack of a prior disciplinary record, the allegation that the clients suffered no loss from his misconduct, his payment of all penalties in the Ridge estate matter from his own personal funds, and the assertion that his performance was affected by his divorce in 1979, the death of his father the same year, and the death of his best friend shortly thereafter. Lack of a prior disciplinary record can be an appropriate consideration in determining discipline. (*Smith v. State Bar* (1985) 38 Cal.3d 525, 540 [213 Cal.Rptr. 236, 698 P.2d 139].) While we find this to be a mitigating factor, the time between petitioner's admission to practice in 1974 and misconduct in this case does not

render this factor so strong as to warrant dispensing with any period of actual suspension as urged by petitioner. Likewise, we are sensitive to personal problems such as those petitioner suffered. (*Id.* at pp. 540-541.) But events which occurred in 1979 cannot, however tragic, mitigate persistent and wilful misconduct years later. Finally, although petitioner's payment of all penalties in the Ridge estate matter from personal funds is a factor in mitigation, we reiterate that it was petitioner who caused the delay which resulted in the imposition of penalties; accordingly, this factor is not entitled to great weight.

Petitioner has cited to us numerous cases which he urges are analogous to his own and in which lesser discipline was imposed. He urges that he deserves no more than a period of probation with no actual suspension. Appropriate discipline in a case such as this depends on analysis of the individual case; "[t]here are no fixed standards as to the appropriate penalty." (*Alberton* v. *State Bar, supra,* 37 Cal.3d 1, 14; accord *Hawk* v. *State Bar* (1988) 45 Cal.3d 589 [247 Cal.Rptr. 599, 754 P.2d 1096].) Commingling of entrusted funds alone, however, normally calls for at least a three-month actual suspension irrespective of mitigating circumstances, and misconduct in the nature of failure to communicate with the client or perform services may call for different discipline depending on the extent of misconduct. (See Standards 2.2(b), 2.4(b).) Petitioner bears the burden of showing the review department's recommendation is erroneous or unlawful. (Bus. & Prof. Code, § 6083, subd. (c); *Trousil* v. *State Bar, supra,* 38 Cal.3d at p. 341.)

■ Although we ordinarily give great weight to the recommendation of the review department, we exercise our own independent judgment in determining the appropriate discipline to be imposed. (*In re Nadrich* (1988) 44 Cal.3d 271, 276 [243 Cal.Rptr. 218, 747 P.2d 1146]; *Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 550 [237 Cal.Rptr. 168, 736 P.2d 754].) This is particularly appropriate when, as here, the review department and the hearing panel have disagreed,[5] and the review board itself was divided. As to questions of appropriate discipline, we do not hesitate to follow the review department's recommendation if it is adequately supported by the record. (See, e.g., *Guzzetta* v. *State Bar* (1987) 43 Cal.3d 962, 968 [239 Cal.Rptr. 675, 741 P.2d 172, 65 A.L.R.4th 1].)

■ Exercising our independent judgment, we conclude that the review department's recommendation of two years' actual suspension is excessive and not supported by the record. This recommendation is inextricably linked with the review department's refusal to find any mitigating factors

---

[5] The hearing panel recommended that petitioner be actually suspended from the practice of law for only one year, as contrasted with the review department's recommendation of two years' actual suspension.

and erroneous finding that petitioner committed acts of dishonesty and moral turpitude in connection with his handling of the Ridge estate. Nevertheless, petitioner's misconduct is too serious to warrant mere probation; accordingly, we have determined that petitioner's probation should include one year of actual suspension, as recommended by the hearing panel. Such discipline appears adequate to protect the public, preserve confidence in the legal profession and maintain the highest possible professional standard for attorneys. (*Mepham* v. *State Bar, supra,* 42 Cal.3d at p. 948.)

Accordingly, it is ordered that petitioner be suspended from the practice of law for three years, that execution of the suspension be stayed, and that petitioner be placed on probation for three years on condition that he be actually suspended from the practice of law for the first year of said period of probation and that he comply with all other conditions of probation, except for the period of actual suspension, adopted by the review department at its November 5, 1987 meeting. It is further ordered that petitioner take and pass the Professional Responsibility Examination prior to the end of his period of actual suspension and that he comply with rule 955 of the California Rules of Court and perform the acts specified in subdivisions (a) and (c) thereof within 30 and 40 days, respectively, after the effective date of this order. This order is effective upon finality of the decision.