In re Thomas R. CALDWELL and Marianne Caldwell dba Caldwell Goodyear Service, Debtors.

SANWA BANK CALIFORNIA, a California corporation, Plaintiff,

v.

Thomas R. CALDWELL and Marianne Caldwell dba Caldwell Goodyear Service and the State Board of Equalization, Defendants.

Bankruptcy No. SA 88–06853 JR.

Adv. No. SA 89–0518 JR.

United States Bankruptcy Court, C.D. California.

Feb. 16, 1990.

Carol H. Rehm, Jr., Deputy Atty. Gen., Los Angeles, Cal., for the State Bd. of Equalization.

Alban P. Silva, Irvine, Cal., for debtors.

JOHN E. RYAN, Bankruptcy Judge.

Plaintiff Sanwa Bank of California (the "Bank") initiated this adversary proceeding when faced with the conflicting claims of debtors and the State Board of Equalization (the "Board") as to funds in an account at the Bank in the name of debtors (the "Account"). In its complaint, the Bank interplead the funds in the Account (the "Funds") and sought declaratory relief to determine who had the superior claim to the Funds. The Bank, by stipulation of the parties, deposited the Funds with the Registry of the Court and was discharged from any further liability. Faced with the task of resolving these competing claims, I took the matter under submission on November 22, 1989.

## JURISDICTION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(a) (the district courts shall have original and exclusive jurisdiction of all cases under Title 11), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## STATEMENT OF FACTS

The Funds amount to $7,481.74. The Board claims that debtors owe sales and use taxes including interest and penalties for January 1, 1978 through June 30, 1986 totaling approximately $826,426. In order to facilitate the resolution of this matter, debtors and the Board stipulated to the following facts:

1. At all relevant times debtors were indebted to the State of California for delinquent sales and use taxes in an amount in excess of the amount of the Funds.

2. On April 9, 1987, the Board issued to debtors a jeopardy determination of taxes to be collected and paid to California.

3. On April 10, 1987, the Board filed a Notice of State Tax Lien against debtors' personal property with the Secretary of State for California.

4. On April 14, 1987, the Board filed a Notice of State Tax Lien against the debtors' real property with the Recorder for Orange County, California.

5. On November 7, 1988, the Board served its Notice of Levy upon the Bank.

6. On November 17, 1988, debtors filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code.

7. On August 25, 1989, this court entered an order directing the Bank to deposit the Funds into the Registry of the Court.

## DISCUSSION

Debtors argue that the automatic stay provision of 11 U.S.C. § 362 controls the outcome of this case. Section 362 provides in pertinent part that all entities are stayed from pursuing any action against a debtor "[T]hat was or could have been commenced before the commencement of the case...." This provision applies, however, only to proceedings taken "[A]gainst the debtor or against property of the estate...." Section 362 has no application to property that debtors ceased to have an interest in prior to the filing of the bankruptcy petition.

The issue before me is whether the service of the Notice of Levy caused debtors' right, title and interest to the Funds to transfer to the Board.

Section 541(a)(1) of the Bankruptcy Code defines in part the "estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case." The scope of this provision is very broad. It includes all kinds of property, including tangible or intangible property and various causes of action. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 2313 n. 9, 76 L.Ed.2d 515 (1983); 4 Collier on Bankruptcy ¶ 541.01 at 541-5 (15th ed. 1988).

To determine the boundaries of these "interests", it is necessary to look to nonbankruptcy law. As Collier's states:

[T]he existence and nature of a debtor's interest in property, and of his debts, are determined by nonbankruptcy law. Neither the Code nor the Bankruptcy Act provides any rules for determining whether the debtor has an interest in property or whether he owes a debt. Determination of these issues, therefore, requires resort to nonbankruptcy law.

4 Collier on Bankruptcy ¶ 541.02, at 541-10-11 (15th ed. 1988). In discussing § 541(a)(1), the Ninth Circuit in *In re Farmers Market, Inc.*, 792 F.2d 1400 (9th Cir.1986), supports this view stating: "That provision merely defines what interests of the debtor are transferred to the estate. It does not address the threshold questions of the existence and scope of the debtor's interest in a given asset. Under both the Act and the Code, we resolve these questions by reference to nonbankruptcy law." *Id.* at 1402. In determining, therefore, whether the Funds are part of the estate, I must look to California law.

California Revenue and Taxation Code § 6757(a) provides:

If any person fails to pay any amount imposed under this part [sales and use taxes] at the time it becomes due and payable, the amount thereof, including penalties and interest, together with any costs in addition thereto, shall thereupon be a perfected and enforceable state tax lien....

Section 6757 also states that these amounts become "due and payable" when the notice of the Board's finding, in the form of a jeopardy assessment, is mailed or issued. The stipulated facts clearly show that debtors were issued a jeopardy assessment on April 9, 1987. Accordingly, under state statutory law, the Board obtained a perfected and enforceable state tax lien as of April 9, 1987.

Although debtors' failure to pay the sales and use taxes created a perfected and enforceable lien, debtors still owned the Funds subject to the Board's interest. As the Supreme Court held in *Whiting*, there is no requirement that a debtor hold a possessory interest in the property at the commencement of the reorganization. 462

U.S. at 206, 103 S.Ct. at 2314. Debtors, therefore, retained an interest in the Funds even though the Funds were held by the Bank and the Board had a lien for unpaid taxes. Debtors' interest in the Funds would only terminate if ownership of the Funds transferred to the Board before commencement of the case. *Id.* at 209, 103 S.Ct. at 2315.

Before the bankruptcy filing, the Board issued its Notice of Levy pursuant to California Revenue and Taxation Code § 6703. Section 6703 provides:

> [T]he board may by notice of levy, served personally or by first-class mail require all persons having in their possession, or under their control, any credits or other personal property belonging to a retailer or other person liable for any amount under this part to withhold from such credits or other personal property the amount of any tax, interest, or penalties due from such retailer or other person or the amount of any liability incurred by them under this part, and to transmit the amount withheld to the board at such times as it may designate. *The notice of levy shall have the same effect as a levy pursuant to a writ of execution.*

Section 6703 was amended on January 1, 1988 to provide that a notice of levy is equivalent to a levy. A levy transfers ownership in property.[1] This usually takes place when a law enforcement officer seizes the property. Under § 6703, the Bank in effect becomes the executing officer for the benefit of California. See *Del Riccio v. Superior Court,* 115 Cal.App.2d 29, 30, 251 P.2d 678 (1952).[2]

In conclusion, the Board issued a jeopardy determination on April 9, 1987. Under § 6757, the Board perfected its lien. On November 7, 1988, the Board served its Notice of Levy on the Bank in accordance with § 6703. This resulted in a levy extinguishing debtors' property interest in the Funds. In other words, the Notice of Levy transferred ownership of the Funds from debtors to the Board. Accordingly, when debtors filed their bankruptcy petition on November 17, 1988, debtors had no interest in the Funds. The Funds, therefore, never became part of the bankruptcy estate subject to the automatic stay provisions of § 362.

Accordingly, the Funds shall be paid to the Board plus any accrued interest less appropriate court fees.

---

1. There are two cases which have dealt with these issues. In *In re Paul,* 85 B.R. 850 (Bankr. E.D.Cal.1988), a debtor owed the Board $13,000 for unpaid taxes. The Board served notices of levy on two banks pursuant to § 6703. Two days after service of these notices, the debtor filed bankruptcy under Chapter 13. The debtors sought turnover of the funds held by the bank.

Even though the amendment providing that a notice of levy is equivalent to a levy was not in effect, the court concluded that funds in the accounts were *not* property of the estate. Rather, the court found that "the notice of levy served upon the two banks prior to the filing of the debtors' Chapter 13 petition transferred ownership of the funds to the Board." *Id.* at 853.

In *In re Cross Electric Co., Inc. v. United States,* 664 F.2d 1218 (4th Cir.1981), the Fourth Circuit, while examining Federal law, addressed the question whether a tax levy divests the debtor of ownership rights. In *Cross,* the Internal Revenue Service (the "IRS") filed liens against the debtor for unpaid FICA taxes. The debtor owed the IRS approximately $40,000. The debtor, in turn, was owed approximately $5,000 by a construction company for work he performed

as a subcontractor. The IRS levied upon the account receivable requiring the general contractor to pay the IRS instead of debtor. About one month after the notice of levy was filed, the debtor filed a Chapter 11 petition.

The issue before the *Cross* court was whether the IRS notice of levy on the account receivable effected a levy so that the funds never became property of the estate within the meaning of § 541. *Id.* at 1219. The court concluded that the "[L]evy operated as 'virtually a transfer to the government of the indebtedness'". *Id.* at 1220.

2. In contrast to other sections of the California Revenue and Taxation Code, a debtor has no right to redemption under § 6703. Redemptive rights normally allow a debtor to pay the taxes and retain the property. Without the right of redemption, a levy under § 6703 terminates any and all interests a debtor may have in the property. California Civil Procedure Code § 700.140(c) lends further support to this view. It provides that once a levy on an account occurs, the bank cannot honor any checks or requests for the withdrawal of money from the account. This prohibition extends to all amounts on deposit in the bank at the time of execution.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. This memorandum opinion shall constitute my findings of fact and conclusions of law.