In re Henry Michael **RAMIREZ**, Debtor.

Henry Michael **RAMIREZ**, Appellant,

v.

Lowell R. **FUSELIER**, Leonard Goldberg, Nicky Sharp, E.M. Arthur, Appellees.

BAP No. SC–94–1160–JOF.
Bankruptcy No. 93–07683–B13.
Adv. No. 93–90601–B13.

United States Bankruptcy Appellate Panel, for the Ninth Circuit.

Argued and Submitted July 21, 1994.

Decided May 25, 1995.

Fenning, J., sitting by designation, filed concurring opinion.

Earl J. Thomas, Escondido, CA, for Henry Michael Ramirez.

Zephyr V. Carlyle, Lowell Robert Fuselier, Oceanside, CA, for Leonard Goldberg and Lowell R. Fuselier.

Len Pollard, San Diego, CA, for Nicky Sharp and E.M. Arthur.

Before JONES, OLLASON and FENNING,[1] Bankruptcy Judges.

### OPINION

JONES, Bankruptcy Judge:

### SUMMARY

Appellant, Henry M. Ramirez, Esq. ("Ramirez"), is an attorney practicing law in San Diego, California. To collect on a judgment against Ramirez, the appellee, Leonard Goldberg ("Goldberg"), a chiropractor whose

---

1. Honorable Lisa Hill Fenning, Bankruptcy Judge for the Central District of California, sitting by designation.

practice is also located in San Diego, obtained a writ of execution from the San Diego County Municipal Court on July 13, 1993. The writ placed a levy upon money and equipment in Ramirez's law office. On July 15, 1993, Ramirez filed a Chapter 13[2] petition and served the levying officer with a bankruptcy stay order. To prevent the levying officer from violating the automatic stay, Ramirez filed a motion requesting that the San Diego County Municipal Court release the levy placed on his property. The Municipal Court denied the motion. The following day, after he had received notice of the automatic stay, the Marshal removed all property from Ramirez's law office, including his client files. As a result of the receiver's failure to turn over the client files, the removal of the client files from the premises, and the delays in the eventual return of the client files, Ramirez sought sanctions against the receiver. Ramirez filed a motion for order of contempt in violation of the automatic stay, which the bankruptcy court denied. Ramirez appeals.

## BACKGROUND

Ramirez signed a medical lien while representing Goldberg's patients in a personal injury action. Upon settlement of the action, the lien secured payment to Goldberg for services rendered to his patients. The parties to the action settled the lawsuit, however Ramirez never paid Goldberg. Goldberg consequently filed a complaint against Ramirez. Judicial arbitration resulted in an award for Goldberg. Ramirez then requested a trial, which resulted in a judgment for Goldberg. The trial court judgment was affirmed on appeal.

To collect on the judgment, Goldberg obtained a writ of execution from the San Diego County Municipal Court on July 13, 1993. The writ placed a levy upon all money, inventory and equipment related to Ramirez's law firm. Realizing that an inventory of the premises would take several days, the Marshal installed Appellee, E.M. Arthur ("Ar-

**2.** Unless otherwise indicated, all references to Chapters, Sections or Rules are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* and to the

thur"), as keeper on Ramirez's property on July 14, 1993.

On July 15, 1993, Ramirez filed a petition for relief under Chapter 13 and served Arthur with a bankruptcy stay order. In an effort to prevent Arthur from removing property, Ramirez filed a motion asking the San Diego County Municipal Court to release the levy placed on his property. On July 19, 1993, the Municipal Court denied Ramirez's motion, holding that the Marshal obtained constructive possession when Arthur became keeper of Ramirez's property. The Marshal refused to turn over the client files and, the following day, he removed all property from Ramirez's office, including the client files. After some delay, the client files were eventually returned to Ramirez.

Ramirez filed a motion for order of contempt in violation of the automatic stay against Goldberg, Arthur and Goldberg's attorney, Lowell R. Fuselier ("Fuselier"), in the Bankruptcy Court for the Southern District of California. In denying the motion, the bankruptcy court concluded that the defendants did not violate the automatic stay. Ramirez appeals, contending that the bankruptcy court abused its discretion in not finding Goldberg, Fuselier and Arthur in contempt of court. We REVERSE and REMAND.

## STANDARD OF REVIEW

■ We review a bankruptcy court's decision to deny a motion for contempt sanctions for an abuse of discretion. *See In re Cascade Roads, Inc.,* 34 F.3d 756, 766–67 (9th Cir.1994) (remanding for bankruptcy court to exercise its discretion regarding the imposition of sanctions for contempt) (citing *In re Chugach Forest Prods., Inc.,* 23 F.3d 241, 244 n. 4 (9th Cir.1994)); *In re Goodman,* 991 F.2d 613, 620 (9th Cir.1993) (stating that, on remand, the bankruptcy court should exercise its discretion in deciding whether to deny civil contempt sanctions; noting, however, that under Section 362(h) the award of damages is mandatory).

Federal Rules of Bankruptcy Procedure, Rules 1001, *et seq.*

The bankruptcy court's findings of fact are reviewed for clear error, and the conclusions of law are reviewed *de novo. In re Eastport Assoc.*, 935 F.2d 1071, 1079 (9th Cir.1991). Mixed questions of law and fact are reviewed *de novo. In re Wade*, 115 B.R. 222, 225 (9th Cir. BAP 1990), *aff'd,* 948 F.2d 1122 (9th Cir.1991). Statutory interpretation is reviewed *de novo. Trustees of the Amalgamated Ins. Fund v. Geltman Indus., Inc.*, 784 F.2d 926, 929 (9th Cir.1986), *cert. denied,* 479 U.S. 822, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986).

## ISSUES

1. Whether the bankruptcy court erred in finding that the removal of the files and equipment to another location, from which they were eventually retrieved only with great difficulty and delay, did not violate the automatic stay.

2. Whether the seized property was part of Ramirez's estate for purposes of the automatic stay after the Marshal completed its levy.

3. Whether the violation of the automatic stay warrants compensatory damages pursuant to Section 362(h).

4. Whether the violation of the automatic stay warrants punitive damages.

5. Whether Arthur, as levying officer, is immune from liability.

## DISCUSSION

### I. *The Seizure of Client Files Violated the Automatic Stay*

The automatic stay of Section 362 protects property of the estate in which the debtor has a legal, equitable or possessory interest. *Interstate Commerce Comm'n v. Holmes Transp., Inc.*, 931 F.2d 984, 987 (1st

Cir.1991). Legislative history indicates that property of the estate "includes charges on property, such as liens held by the debtor on property of a third party, or beneficial rights and interest that the debtor may have in property of another." 124 Cong.Rec. 096 (Sept. 28, 1978) (statement of Rep. Edwards), S. 17,413 (Oct. 6, 1978) (statement of Sen. DeConcini).

As recognized by the Ninth Circuit, the Section 362 automatic stay is a critical protection of bankruptcy law and quite broad in its scope:

It is designed to effect an immediate freeze of the *status quo* by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate. The automatic stay plays a vital and fundamental role in bankruptcy. The stay ensures that all claims against the debtor will be brought in a single forum, the bankruptcy court. The stay protects the debtor by allowing it breathing space and also protects creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others.

*Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993) (citations omitted).

Under California Rules of Professional Conduct, attorneys are considered fiduciary custodians of client files and are required to keep and maintain such files for five years after the conclusion of a case.[3] It is well settled under California law that an attorney has a duty to promptly surrender any communicated work product contained in an attorney's litigation file upon request of the client. *Rose v. State Bar*, 49 Cal.3d 646, 655, 262 Cal.Rptr. 702, 779 P.2d 761 (1989). The California Supreme Court has also noted

---

**3.** California Rules of Professional Conduct, Rule 4–100 (West Supp.1995) provides in pertinent part:

(B) A member shall:
. . . .
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the law firm and render appropriate accounts to the client regarding them; preserve such records for a

period of no less than five years after final appropriate distribution of such funds or properties; and comply with any order for an audit of such records issued pursuant to the Rules of Procedure of the State Bar.
(4) Promptly pay or deliver, as requested by the client, any funds, securities, or other properties in the possession of the member which the client is entitled to receive.

588

that it is unacceptable for an attorney to require clients to repossess their own files from an attaching creditor. *Ridge v. State Bar*, 47 Cal.3d 952, 963, 254 Cal.Rptr. 803, 766 P.2d 569 (1989). The Supreme Court in *Ridge* noted that: "It is outrageous [to suggest] that a client must personally search the public record to try to learn of the status of his cases or approach an attorney's landlord in an attempt to retrieve his case files." *Id.* The *Ridge* court also noted that an attorney's failure to provide a proper accounting for entrusted funds under such circumstances would be grounds for discipline whether or not financial loss has ultimately occurred. *Id.* at 961, 254 Cal.Rptr. 803, 766 P.2d 569.

■ In the instant case, the removal of the client files and equipment to another location, from which they were eventually recovered only with great difficulty and delay, affected Ramirez's law practice. Ramirez's inability to practice law, in turn, affected his ability to maintain a repayment plan. The serious consequences of the removal and delayed turn over of Ramirez's client files, after notice of the automatic stay, is the type of activity that Congress intended the automatic stay to prevent. In light of the expansive parameters of the automatic stay, and the fact that Ramirez had an interest in his client files that the stay is intended to protect, we conclude that the automatic stay applied to the client files.

**II. *The Automatic Stay Applied to the Levied Property***

■ Appellees argue that the automatic stay did not apply to Ramirez's property because the completion of the levy through the installation of Arthur as keeper meant that the equipment and client files were not property of Ramirez's estate. We disagree.

According to Cal.Civ.Proc.Code Section 687.030 (West 1987), a levying officer completes a levy by taking property into custody. Section 687.030 provides that a levying offi-

cer may take property into custody either by 1) removing the property to a safe place, 2) installing a keeper or 3) otherwise obtaining possession or control of the property. Since the Marshal installed Arthur as keeper on July 14, 1993, the Marshal had custody of the property and the levy was complete from this day forward.[4]

■ While the bankruptcy court correctly held that the Marshal completed its levy on Ramirez's property upon the installation of Arthur as keeper, we conclude that the bankruptcy court committed clear error in holding that the automatic stay did not apply to the levied property.

Section 362(c)(1) states:

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is *no longer property of the estate. . . .*

11 U.S.C. § 362(c)(1) (emphasis added).

Appellees argue that since the Marshal completed its levy on Ramirez's property prior to Ramirez filing his bankruptcy petition, the property was not part of the estate for purposes of the automatic stay. However, Section 542 grants to the estate a possessory interest in certain property that the debtor did not hold at the commencement of the bankruptcy proceeding.

Section 542(a) requires an entity holding property of the debtor to turn such property over to the trustee if the trustee can use, sell, or lease it under Section 363. In *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203, 103 S.Ct. 2309, 2312–13, 76 L.Ed.2d 515 (1983), the Supreme Court concluded that Section 542(a) includes debtor's property previously repossessed by a creditor. *Id.* at 203, 103 S.Ct. at 2312–13; *see, e.g., In re Anaheim Elec. Motor, Inc.*, 137 B.R. 791, 794–96 (Bankr.C.D.Cal.1992) (finding that, despite the existence of a perfected and enforceable lien, where a debtor retains turn-

4. Although Ramirez argues that in order to complete its levy, the Marshal needed to obtain "exclusive custody" of the property pursuant to Cal. Civ.Proc.Code § 700.070, this section only applies when a creditor chooses a levy which allows a debtor to continue running its business after a levying officer installs a keeper. Cal.Civ.

Proc.Code § 700.070 (West 1987). The Marshal only allowed Ramirez to continue to run his firm after realizing that inventorying the property would take several days. Ramirez's continued practice in the levied property was not authorized by Goldberg's instructions for the levy, and § 700.070 does not apply to the case at bar.

over or redemption rights under a lien or levy statute, the debtor's interest in the property at issue does not terminate; thus, since ownership is not transferred pre-petition, the property is part of the bankruptcy estate). The *Whiting Pools* court recognized, however, that if the levy transfers complete ownership of the property seized to the creditor, then the debtor's estate will not include property that a creditor seized prior to the filing of the bankruptcy petition. *Id.* at 209, 103 S.Ct. at 2315–16; *see, e.g., In re Caldwell,* 111 B.R. 836, 838 (Bankr.C.D.Cal. 1990) (holding that since terms of tax lien statute specified that "[a] levy transfers ownership in property," the debtors' right, title and interest in funds were transferred to the State pre-petition, and the funds never became property of the bankruptcy estate).

In the instant case, the California statute did not specify that a completed levy transfers ownership in property. Furthermore, Goldberg did not seek complete ownership of Ramirez's property. Goldberg sought reimbursement of money resulting from judgment for chiropractic services he had performed on Ramirez's clients. If the Marshal were to sell Ramirez's personal property, Goldberg would get the amount provided by the judgment and Ramirez would get the remainder. Because Goldberg did not seek complete ownership of the levied property, the property was a part of the estate after Ramirez filed his bankruptcy petition. Therefore, the automatic stay applied to the levied property.

### III. *Imposition of Damages*

■ The parties below filed a motion for contempt. Since the power of bankruptcy courts to issue sanctions in response to a motion for contempt is not clear in the Ninth Circuit,[5] and since the plaintiff below was an individual, Section 362(h) provides a less troubling means for awarding sanctions in the instant case.

Section 362(h) provides, in pertinent part, that:

> (h) An individual injured by any *willful violation* of a stay ... *shall recover actual damages,* including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h) (emphasis added).

■ The words "shall recover" indicate that Congress intended that the award of actual damages, costs and attorney's fees be mandatory upon a finding of a willful violation of the stay. *In re Taylor,* 884 F.2d 478, 483 (9th Cir.1989); *In re Sansone,* 99 B.R. 981, 987 (Bankr.C.D.Cal.1989).

■ The test for determining whether a violation of an automatic stay is willful is: 1) whether the appellees knew of the stay and 2) whether appellee's actions, which violated the automatic stay, were intentional. *In re Bloom,* 875 F.2d 224, 227 (9th Cir. 1989). "Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the automatic stay provided under § 362." *In re Pace,* 159 B.R. 890, 901 (9th Cir. BAP 1993) (citing *In re Zartun,* 30 B.R. 543, 546 (9th Cir. BAP 1983)). Furthermore, in determining whether the violation was willful, it is irrelevant whether the party believed in good faith that it had a right to the property at issue. *Bloom,* 875 F.2d at 227; *Pace,* 159 B.R. at 901. "Not even a 'good faith' mistake of law or a 'legitimate dispute' as to legal rights relieve a willful violator of the consequences of his act." *Sansone,* 99 B.R. at 987 (quoting *In re AM Int'l Inc.,* 46 B.R. 566, 567 (Bankr.M.D.Tenn.1985)).

■ Because Ramirez served appellees with a bankruptcy stay order on July 15,

---

5. *See Goodman,* 991 F.2d at 620 (stating that for debtors who are not "individuals" for purposes of Section 362(h), the proper means of compensation and punishment for willful violations of the automatic stay are bankruptcy court contempt proceedings) (citing with approval and adopting the reasoning of, *inter alia, In re First RepublicBank Corp.,* 113 B.R. 277, 279 (Bankr. N.D.Tex.1989) (recognizing power of bankruptcy court under Section 105 and Rule 9020 to impose contempt sanctions for violation of the automatic stay)). *But see In re Sequoia Auto Brokers, Ltd., Inc.,* 827 F.2d 1281, 1283–91 (9th Cir.1987) (finding that bankruptcy courts lack independent authority to issue contempt sanctions and stating that Section 105 is not a persuasive source of the contempt power); *see also Cascade Roads,* 34 F.3d at 767 (citing *In re Pace,* 159 B.R. 890, 904 (9th Cir. BAP 1993) (proposing that the Ninth Circuit in *Goodman* clearly meant 'sanctionable conduct' when it used the term 'contempt' for violation of the automatic stay)).

1993, the appellees knew of the automatic stay on the day of the violation, July 20, 1993. Furthermore, for purposes of determining whether their violation was willful, it is irrelevant that appellees might have believed that they had a right to Ramirez's property after the state court denied Ramirez's motion to release the levy. Appellees intended to take Ramirez's property. Clearly, under the *Bloom* standard, appellees' act of confiscating Ramirez's property was a willful violation of the automatic stay mandating the award of compensatory damages under Section 362(h).

The *status quo* at the petition date consisted of a keeper in place at the debtor's place of business, with all records intact at that location. The violation of the stay was the removal of the files and equipment to another location from which they were eventually retrieved only with great difficulty and delay. In determining the amount of actual damages to be awarded on remand, the bankruptcy court should evaluate the amount of damages caused by appellant's failure to turn over the client files, his removal of the files from the premises after notice of the automatic stay, and the delays associated with his eventual return of the files.

### IV. *Punitive Damages*

Ramirez further contends that punitive damages are appropriate against Goldberg and Fuselier, Goldberg's attorney, because Fuselier approved of the removal of Ramirez's property after notification of the bankruptcy stay order. Punitive damages will be awarded only if a defendant's conduct was malicious, wanton or oppressive. *Sansone v. Walsworth*, 99 B.R. 981, 987 (Bankr. C.D.Cal.1989) (citing *Shuman v. Standard Oil Co.*, 453 F.Supp. 1150, 1154 (N.D.Cal. 1978)).

In *Sansone*, the debtor filed a bankruptcy petition and then proceeded against the creditor in another case. The creditor's attorney filed two cross-complaints against the debtor for money damages. *Id.* at 990. The *Sansone* court held that the filing of cross-complaints violated the automatic stay and warranted punitive damages because the filings were an "intentional abuse of legal power and a deliberate and arrogant defiance of federal bankruptcy law." *Id.*

Although Fuselier approved of the removal of property from Ramirez's office after notification of the bankruptcy stay order, the removal only proceeded after the Municipal Court denied Ramirez's motion to release the levy. Because Fuselier may have believed that the Municipal Court's validation of the levy meant he could approve of the removal, this may not constitute an "intentional abuse of legal power and a deliberate and arrogant defiance of federal bankruptcy law." We further note the allegations of contumacious behavior and assault by Ramirez against the keeper, Arthur. The automatic stay does not justify or protect such conduct. Consequently, we remand for a determination of whether punitive damages are appropriate.

### V. *Arthur's Liability*

Cal.Civ.Proc.Code Section 687.040 provides in relevant part:

(a) The levying officer ... is not liable for ... actions taken in conformance with the provisions of this title in reliance on information contained in the written instructions of the judgement creditor ... except to the extent the levying officer ... has *actual knowledge* that the information is incorrect....

CAL.CIV.PROC.CODE § 687.040 (West 1994) (emphasis added).

Appellants propose that Arthur is liable for violating the automatic stay because, as keeper, he knew the stay was in effect as soon as Ramirez filed his bankruptcy petition. Although this is true, nothing in the record suggests that Arthur knew that the stay still applied after the validation of the levy by the Municipal Court. Consequently, we remand for a determination of whether Arthur actually knew that the automatic stay was in effect when he removed Ramirez's client files and equipment on July 20, 1993.

### CONCLUSION

Although the bankruptcy court correctly found that the levy on Ramirez's property was complete upon the installation of Arthur as keeper, the bankruptcy court committed clear error in finding that Goldberg and Fuselier did not violate the automatic stay by

removing the client files from Ramirez's law office. Accordingly, we REVERSE the bankruptcy court's denial of Ramirez's motion for order of contempt and REMAND for a determination: 1) whether Arthur, as levying officer, knew that the automatic stay was in effect when he removed Ramirez's property on July 20, 1993; 2) the amount of actual damages associated with the removal and delayed return of the files; and 3) whether punitive damages are appropriate.

FENNING, Bankruptcy Judge, concurring.

I concur in the judgment of the Court and generally concur in its reasoning. I write separately to emphasize the obligation of creditors and levying agents in state court proceedings to respect the automatic stay. I want there to be no room for misunderstanding in future cases: if creditors or levying agents take *any* steps to alter the *status quo* at the time of the bankruptcy filing without first obtaining relief from stay in the bankruptcy court, they will subject themselves to potential liability for compensatory and punitive damages under § 362(h) of the Bankruptcy Code. Especially given our ruling in this case, they cannot justify continued enforcement action on the grounds that they reasonably believe a debtor's property in the hands of a keeper is beyond the protection of the automatic stay.

The automatic stay triggered by the filing of a bankruptcy petition is the bedrock foundation upon which the entire Bankruptcy Code is built. Designed to freeze ongoing efforts by creditors to enforce their claims against the debtor, the automatic stay is supposed to halt creditors' costly and disruptive scrambles to seize the debtor's property and shut down the debtor's business. This freeze provides the essential "breathing space" required for the equitable processes of bankruptcy to assure preservation of viable businesses and fair distribution of available assets to creditors.

Actions in violation of the stay are void. *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992); *In re Williams*, 124 B.R. 311, 317–18 (Bankr.C.D.Cal.1991). The debtor is entitled to rely on the stay. After giving notice of the bankruptcy filing, the debtor is *not* supposed to have to go to other courts to prevent further collection or enforcement action. Creditors and their agents must immediately *stop* all collection and enforcement actions affecting the debtor or property of the estate. If there is any question about the applicability or scope of the stay, the *creditors* are required to come to the bankruptcy court to obtain clarification or relief from the stay. *In re Schwartz*, 954 F.2d at 572.

Any erosion of these fundamental precepts would undercut the very attribute that accounts for the effectiveness of this powerful legal tool—its *automatic* nature. Any creditor or agent that continues collection or enforcement actions after notice of a bankruptcy filing acts at its peril. Intentional acts in knowing disregard for the automatic stay subject the violator to compensatory and punitive damages. *In re Bloom*, 875 F.2d 224, 226–27 (9th Cir.1989).

In the present case, the *status quo* as of the filing was a keeper in place at the debtor's office. All client files and personal property were still intact and in place. Because the execution sale had not yet occurred, the debtor still held title to all of these items which therefore became property of the estate upon the filing of the bankruptcy petition. Under California law, a judgment debtor's title to property is not transferred until the execution sale, when the debtor's title is sold to a purchaser. Cal.Civ.Proc. Code § 701.640 (West 1987). If the sale realizes more than the debt to be satisfied, the excess proceeds must be returned to the debtor. Cal.Civ.Proc.Code § 701.810(h) (West 1987). Rather than transfer title, the completed levy only "creates an execution lien on the property from the time of the levy." Cal.Civ.Proc.Code § 697.710 (West 1987).[6] A debtor's property that has been seized prepetition by a creditor nevertheless retains its character as property of the estate within the expansive scope of § 541(a)(1) of the Bankruptcy Code. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203–09, 103 S.Ct. 2309, 2312–16, 76 L.Ed.2d 515 (1983).

---

**6.** See, e.g., *Grothe v. Cortlandt Corp.*, 11 Cal. App.4th 1313, 1321, 15 Cal.Rptr.2d 38, 42 (Ct. App.1992) (levy on real property creates an execution lien which does not sever a joint tenancy

Therefore, the keeper should have taken no further steps toward execution sale, unless and until relief from stay was obtained from the bankruptcy court. Instead, however, he flatly refused to turn over the client files. He then caused the furniture, office equipment, and client files to be removed from the debtor's office to a storage facility. This removal had several direct consequences: (1) moving and storage costs were incurred; (2) the client files were rendered wholly inaccessible during the period of storage; and (3) once the files were ordered returned to debtor, having to retrieve the files from an off-site storage facility resulted in substantial further delays. Thus, the debtor's damages from the violation of the automatic stay may include reimbursement of storage and transportation charges, loss of income resulting from the post-petition disruption of his practice, and attorney fees and costs for the resulting proceedings in the state and bankruptcy courts. Whether punitive damages are warranted, however, is more problematic. The debtor must bear some responsibility for having erroneously sought a turnover order from *state* court, which no longer had jurisdiction over property of the estate, rather than from the bankruptcy court. which did. While the state court orders are presumptively void under *In re Schwartz*, 954 F.2d at 571, the unusual circumstances of the debtor's conduct should be taken into account in assessing blame and measuring damages in this case.

In addition to my serious concerns about the apparent disregard for, and misunderstanding about the automatic stay demonstrated by the conduct of the parties, I was also troubled by the manner in which the client files were handled. Under California law, client files belong to the client, not to the attorney. *See, e.g., Rose v. State Bar,* 49 Cal.3d 646, 655, 262 Cal.Rptr. 702, 706, 779 P.2d 761, 765 (1989) (file belongs to client and must be surrendered promptly upon client's request; attorney's failure promptly to retrieve and deliver client's files from possession of a third party violated applicable rule);

*Kallen v. Delug,* 157 Cal.App.3d 940, 950, 203 Cal.Rptr. 879, 885 (Ct.App.1984) (attorney has unconditional duty to turn over files upon client's request, and cannot insist upon payment of unpaid fees). Such files are not the attorney's "assets," and therefore could not properly be included in an execution sale of the attorney/debtor's property. *See* Cal.Civ. Proc.Code §§ 695.010—695.070 (West 1987). Neither the judgment creditor nor the keeper could ever acquire any cognizable interest in the client files. Unassignable or nontransferable property is exempt from levy and execution. Cal.Civ.Proc.Code § 695.030(a) (West 1987).

The attorney, however, has a possessory interest in the files for purposes of the representation of the client in the matters for which the attorney has been retained. This possessory interest comes into the estate upon the filing of the bankruptcy petition as property of the estate within the scope of § 541(a). As the Ninth Circuit has emphasized, Congress intended to include "all legally recognizable interests" within the definition of property of the estate. *In re Ryerson,* 739 F.2d 1423, 1425 (9th Cir.1984). Upon the filing of this case, the rights to, possession of, and duties to maintain the client files and records became the responsibility of the debtor as the representative of the estate. *See In re Englewood Community Hosp. Corp.,* 117 B.R. 352, 355 (Bankr. N.D.Ill.1990) (J. Squires) (estate is administratively liable for medical records storage and disposition costs incurred by duly authorized agent of the estate, but not by unauthorized claimant). Because the automatic stay thus protects these files and records against creditor enforcement actions, the bankruptcy court can act to protect the interests of both the debtor/attorney and his clients in this case.

But the conflict between the client's interest and the judgment creditor's enforcement action transcends the bankruptcy issues. Attorneys have professional and ethical obligations with respect to client files. The California Rules of Professional Conduct prohibit the transfer of client property without the

or transfer title until the execution sale is completed); *California Commerce Bank v. Superior Court,* 8 Cal.App.4th 582, 587, 10 Cal.Rptr.2d 418 (Ct.App.1992) (marshal's levy created an ex-

ecution lien upon bank deposit, subject to judgment debtor's right to immediate release of the lien and return of the asset upon posting of an appeals bond).

client's authorization, and impose upon attorneys an affirmative duty to protect, preserve, and account for the client's papers and property. *See* California Rules of Professional Conduct Rules 3–700(D)(1), 4–100(B) (West Supp.1995).

This debtor's strenuous efforts to recover the client files for the purposes of completing his representation of his clients were consistent with these important professional obligations. His clients urgently required assistance in defense against criminal charges. Their attorney's failure to pay a debt should not deprive them of an adequate and timely defense by a member of the bar, aided by the materials in their client files.

As a matter of California law, it is extremely difficult to discern any legal justification for the keeper's refusal to release the client files immediately. I urge the appropriate state authorities to clarify the responsibilities of levying officers with respect to such client files.