**In re GGSI LIQUIDATION INC., et al., Debtors.**

**Gus A. Paloian, not individually but solely in his capacity as the Chapter 7 trustee of the Above captioned bankruptcy estates, Plaintiff,**

v.

**Grupo Serla S.A. de C.V. a/k/a Grupo Empresarial Serla, S.A. de C.V.; Editorial Comercial, S.A. de C.V.; Sergio Eduardo Guarneros Trujillo; Bank One individually and as successor-in-interest to First National Bank of Chicago, a national banking, association, and Union Industrial Mexicana, S.A. de C.V., Defendants.**

**Bankruptcy No. 01 B 31751.**
**Adversary No. 03 A 03888.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Nov. 27, 2006.

Joseph R. Curcio, Joseph R. Curcio Ltd., Chicago, IL, for creditor.

Daniel P. Dawson, Nisen & Elliott, LLC, William J. Factor, Sara E. Lorber, Charles S. Riecke, Seyfarth Shaw LLP, Allen J. Guon, Shaw Gussis Fishman Glantz, Wolfson & Towbin, Fred R. Harbecke, Bart F. Higgins, Sopuch Arnett Higgins & Gaubert LLP, Mark A. McDermott, Skadden, Arps, Slate, Meagher & Flom, E. King Poor, Winston & Strawn LLP, Jason M. Rosenthal, Schopf & Weiss, LLP, Ariel Weissberg, Weissberg & Associates, Ltd., Lawrence B. Finn, Robert B. Millner, Mark W. Page, Sonnenschein Nath & Rosenthal LLP, Joseph M. Russell, Joel A. Schechter, Law Offices of Joel Schechter, Chicago, IL, Charles J. Filardi, Filardi Law Offices LLC, New Haven CT, for Plaintiff.

Leslie Allen Bayles, David E. Bennett, Eric S. Prezant, Vedder Price Kaufman & Kammholz, Montes & Associates, Carrie A. Dolan, Cohon, Raizes & Regal LLP,

Vaughn A. White, Law Offices of Vaughn A. White, Chicago, IL, for Defendant.

### ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

Following trial, all parties having rested, Findings of Fact and Conclusions of Law were made and entered herein on September 7, 2006 (351 B.R. 529 (Bankr.N.D.Ill. 2006)) ("Findings and Conclusions"). It was concluded there that the Trustee will recover judgment against Editorial Comercial, Grupo Serla, and Guarneros on Counts I, II, and III for their failure to make payments to Goss pursuant to the Sale and Purchase Agreement. It was further held that the Trustee is not entitled to a declaratory judgment declaring that Goss is the rightful owner of the Grupo Serla Note (Count IV), that Trustee is not entitled to a constructive trust on any and all proceeds from the sale, assignment, disposition, or collection of the Grupo Serla Note in favor of the Trustee (Count V), and that Trustee is not entitled to rescind the December 15, 2000 Agreement (Count VI).

Count VII sought recovery declaring that transfer of the Grupo Serla Note by Bank One was void pursuant to 11 U.S.C. § 549. It was held that while the Note transfer was not void the transfer of Goss' interests in the Note is void and damages of $1,200,000 were awarded. Those damages were awarded because Bank One violated its duty to Goss under U.C.C. § 9–207 as adopted in Illinois. Count VII also sought judgment under § 9–207 against Union Industrial which purchased the Note.

Lastly, it was held in Count VIII that pursuant to Bank One's willful violation of the automatic stay and for reasons stated, judgment would separately enter in favor of Trustee and against Bank One for $1,200,000 in actual damages, plus $100,000.00 in punitive damages, plus attorney fees.

The Plaintiff Trustee filed his Motion to Amend or Add Findings of Fact and Conclusions of Law ("Motion to Amend") and Defendant Bank One filed its Response ("Response") thereto. Subsequent supplemental briefs were filed by the parties.

In the Motion to Amend, the Trustee seeks the following: (1) a judgment entered in favor of the Trustee and against Union Industrial in Count VIII for violation of the automatic stay in collaboration with Bank (an issue not yet specifically ruled on in the original Findings and Conclusions); (2) a ruling that J.P. Morgan Chase N.A. was formerly Bank One and succeeded to its interest under Fed. R. Bankr.P. 7025 and judgment should be entered against it; (3) an increase in the damages awarded against Bank One assertedly based on its violation of its duties under U.C.C. § 9–207; and (4) an increase in the amount of punitive damages.

Plaintiff Trustee also submitted an Application for Attorney Fees and Expenses for Inclusion in the Judgment Against the Foreign Defendants wherein he seeks fees in the amount of $376,818.50 and expenses in the amount of $715.04. Plaintiff submitted a further Application for Attorney Fees and Expenses for Inclusion in the Judgment Against Bank One wherein the Chapter 7 Trustee seeks fees in the amount of $771,865.00 and expenses in the amount of $37,018.91.

The following supplemental briefs and responses were also filed by the parties:

1. Trustee's Supplemental Brief Regarding Punitive Damages filed on October, 3, 2006

2. Trustee's Supplemental Brief Regarding Union Industrial's Liability filed on October 4, 2006

3. Bank One's Response to Trustee's Application for Attorney Fees and Expenses for Inclusion in the Judgment Against Bank One filed October 12, 2006

4. Bank One's Reply in Support of Application for Attorney Fees and Expenses for Inclusion in the Judgment filed October 19, 2006

5. Trustee's Supplement in Support of Application for Fees to Be Included in Judgment Against Bank One filed October 30, 2006

6. Trustee's Second Supplement in Support of Application for Fees to be Included in Judgment against Bank One filed November 7, 2006

7. Bank One's Memorandum Concerning Entry of Judgment filed on November 7, 2006

8. Reply to Bank One's Memorandum Concerning Entry of Judgment filed November 10, 2006

Despite the opportunity to do so, the Foreign Defendants failed to file any supplemental briefs.

No parties sought to offer additional evidence, and all arguments were based on the trial record.

For reasons stated below, and pursuant to separate judgment orders to be entered, in addition to the rulings made in the original Findings and Conclusions, an order will be entered substituting J.P. Morgan Chase, N.A. ("Bank") as a defendant for Bank One; judgment will be entered in Count VIII in favor of the Trustee and against Union Industrial jointly and sever-

ally with the Bank for willful violation of the automatic stay; damages awarded against Bank One in Count VII based on its violation of its duties under U.C.C. § 9–207 will not be increased and judgment will be entered in that Count in favor of Union Industrial; punitive damages awarded to the Trustee in Count VIII for violation of the automatic stay will not be increased; the Trustee's recovery for his attorneys' fees and litigation expenses against the Bank and Union Industrial awarded as additional actual damages in Count VIII under 11 U.S.C. § 362 will be limited to the pre-approved contingency agreement of those attorneys; and fees and expenses sought against the Foreign Defendants will be allowed as additional damages under their contract, as well as interest due to date under that contract.

## ADDITIONAL FINDINGS OF FACT [1]

### Amendment Added to Paragraph 7

Union Industrial is a business entity organized under the laws of Mexico. Union Industrial is related to Guarneros and His Companies as more fully set forth below in paragraphs 103 through 105.

### Guarneros And His Companies Met With Bank One Through Their Representatives In Chicago

93. In Chicago, John Adams ("Adams"), an agent of Guarneros and His Companies met with Chicago counsel for Guarneros and His Companies, William O'Connor ("O'Connor") and Sam Tenenbaum ("Tenenbaum"). (Pl.Ex. 129, Adams Dep., 61–70.) Adams and counsel for Guarneros and His Companies then met with representatives of Bank One. (Pl.Ex. 129, Adams Dep., 70.) Bank One repre-

---

1. Findings originally entered in this Court's Findings of Fact and Conclusions of Law ("Findings and Conclusions") entered September 7, 2006, are incorporated by this ref-erence. Additional Findings of Fact entered below are numbered sequentially to follow the Findings entered on September 7, 2006, 351 B.R. 529 (Bankr.N.D.Ill.2006).

sentatives knew O'Connor represented Guarneros and His Companies at that time. (M. Page, 9/30/05, Test. 62.) Goss was not represented at the meeting. (M. Page, 9/30/05, Test. 62.) Page did not tell the Bankruptcy Creditors' Committee, the Bankruptcy Court or Debtor's Bankruptcy Counsel about the meeting. (M. Page, 9/30/05, Test. 65.)

94. Shortly before the meeting, Adams (a representative of Guarneros and His Companies) sent a detailed e-mail to Guarneros. (Pl.Ex. 59.) In the e-mail, Adams confirmed to Guarneros the following:

a. He spoke with Goss;

b. Goss told him that it had instructed its lawyers in Mexico to do whatever was necessary to file a lien on the equipment in Mexico;

c. the closing of the asset sale had not taken place yet;

d. Bank One had contacted Bill O'Connor in writing (Guarneros was sent a copy) and claimed Bank One still owned the note;

e. he understood Goss had been making payments on the Note;

f. he was going to Chicago;

g. the first thing he was going to do when he got to Chicago was to go to Bank One and find out if Bank One owned the note ("we have to know who owns the Note and what was in the agreement between Bank One and Goss");

h. Goss cannot make any agreement now without Court approval and/or creditor approval: i.e. "whatever they say must first be agreed upon by the judge or the creditors committee. They are the ones with the power to accept or reject any offer or to make any agreement";

i. we could have a meeting with both Bank One and Goss at the same time. They would have to agree on how the money would be split between the both of them. If this has to happen the odds are they will never agree; and

j. Cuco told me today that you were sending me the checks by air to Oklahoma. As soon as I receive those checks, I am leaving for Chicago;

(Pl.Ex. 59.)

136. In the above email from Adams to Guarneros, Adams specifically stated, **"You know that Goss cannot make any agreement now.** What ever they say must first be agreed upon by the Judge or the creditors committee. They are the ones with the power to except [sic] or reject any offer or to make any agreement." (Pl.Ex. 59) (emphasis added).

95. At the meeting, Adams or Tenenbaum raised the issue of having Bank One sell the Grupo Serla Note directly to the makers of the Note. (M. Page, 9/30/05, Test. 63.) The first document drafted by Page relating to the sale of the Note was based on this assumption. (M. Page, 9/30/05, Test. 62; Pl.Ex. 70.) Page also confirmed at trial that Bank One knew Adams had brought the checks endorsed to Goss. (M. Page, 9/30/05, Test. 64.) Page testified that Adams told him at the meeting that there was also a budget to resolve the claims of Grupo Serla's various creditors and that he had the money available in the United States. (M. Page, 9/30/05, Test. 64.)

*Bank One Sold The Grupo Serla Note To The Foreign Defendants Without Seeking An Order Modifying The Automatic Stay*

101. Having succeeded in blocking the payments to Goss, Bank One sold the Grupo Serla Note and related items to Union Industrial Mexicana, S.A. de C.V. ("Union

Industrial") for $1,100,000.00. (Pl.Exhs. 88, 106.)

## The Connection Between Union Industrial And Guarneros And His Companies

103. Union Industrial is related to Guarneros and His Companies. (S. Guarneros, 10/5/05, Test. 30–35.) Guarneros testified to the following: (1) he owns 97% of Grupo Serla and Editorial Comercial; (2) he previously owned 97% of Union Industrial; (3) all three of these companies are located at 711 Suite C, Batriostismo Mexico City; (4) the lawyer for all three companies is Oscar Sosa Gueterez; and (5) none of the three companies has ever had any employees. (S. Guarneros, 10/5/05, Test. 30–35.)

104. Bank One representatives were aware before the closing of the transaction with Union Industrial that Union Industrial was connected to Guarneros and His Companies. (M. Page, 9/30/05, Test. 85.)

105. Guarneros claimed that he sold Union Industrial to his father approximately four years prior to his testimony (about the same time that Union Industrial purchased the Grupo Serla Note). (S. Guarneros, 10/5/05, Test. 31.) Guarneros testified at his deposition that there were no written documents regarding the sale of Union Industrial. (Pl.Ex. 130, Guarneros Dep., 16.) At trial, Guarneros revised his testimony to say that he does not remember any written documents regarding the sale, but that there must be some. (S.Guarneros, 10/5/05, Test. 32.) Guarneros acknowledged in his testimony at trial that he did not produce at trial any documents regarding the alleged sale. (S.Guarneros, 10/5/05, Test. 31–34.)

## The Negotiation Of The Union Industrial Note Purchase Agreement

106. Sale of the Grupo Serla Note by Bank One to Union Industrial was accomplished through two documents: a "Note Purchase Agreement" and an "Amended And Restated Note Purchase Agreement" (collectively the "Union Industrial Note Purchase Agreement"). (Pl.Exhs. 88, 106.) The first draft of the Union Industrial Note Purchase Agreement was prepared by O'Connor, Chicago counsel for Guarneros and His Companies as well as Union Industrial. (Pl.Ex. 75.) On November 21, 2001, O'Connor delivered the first draft to Bank One. (Pl.Ex. 75.) In his cover letter attached to the draft, O'Connor stated, "[A]lthough we are anxious to close, we do not wish to notify Goss until we have reached a signed agreement." (Pl.Ex. 75.)

## Bank One Closed The Union Industrial Note Purchase Agreement

113. At the closing, Bank One gave the original Grupo Serla Note and the Pledge to O'Connor who was the lawyer for: (1) the makers of the note; (2) the defendants named in the Pledge Proceedings; (3) the parties who sold the Printing Press to Quebecor; and (4) the parties who agreed to pay Goss $2,700,000.00 in the Agreement in Principal [sic]. (M. Page, 9/30/05, Test. 99.)

116. When Union Industrial came before the Bankruptcy Court and first claimed in pleadings that it owned the Grupo Serla Note, Bank One (who was served with those pleadings) (M. Page, 9/30/05, Test. 102) did not file anything disputing that Union Industrial owned the Grupo Serla Note at that time. (M. Page, 9/30/05, Test. 102.)

121. On January 18, 2002, Adams, as agent for Editorial Comercial, Grupo Serla, Union Industrial, and Sergio Guarneros, came to Chicago and took the original Grupo Serla Note, the Repurchase Note, the Note Repurchase Agreement, and the Pledge from O'Connor's firm, Sachnoff & Weaver (the Chicago lawyers for Guarneros and His Companies as well as Union Industrial). (Pl.Ex. 110.)

122. Adams took the originals and went to St. Louis to deliver them to Guarneros. (Pl.Ex. 129, Adams Dep., 107.)

Guarneros then took the originals to Mexico. *Id.*

123. Adams confirmed in his deposition that he delivered the original Grupo Serla Note and Pledge to Guarneros, not to Union Industrial:

Q. Now, it says that you as agent for Editorial Comercial, Grupo Empresarial Serla and Union Industrial Mexicana and Sergio Guarneros acknowledge receipt on this 18th day of January, 2002 of the following original documents, copies of which are attached hereto.

Do you see that?

A. Yes, sir.

Q. And did you get those originals on that date?

A. Yes, sir.

Q. And these are true and accurate copies of those?

A. Yes, sir.

(Pl.Ex. 129, Adams Dep., 106.)

Adams continued:

My memory is, which is strong on this one, is that Bill O'Connor and Sam Tenenbaum had been in contact with the Mexican attorneys. This information had been, they had the originals in some suit that was here in Illinois. And so they wanted me to sign for the originals because in Mexico you can't take duplicates. You have to have originals. So I picked up the originals, they put in it [sic] an envelope, I went to St. Louis, gave it to Sergio. And then Sergio took it to Mexico with him.

(Pl.Ex. 129, Adams Dep., 106–07.)

### *ADDITIONAL CONCLUSIONS OF LAW*

**I. *J.P. Morgan Chase N.A. Was Formerly Bank One and Succeeded to its Interest Under Rule 7025 Fed. R.Bankr.P.***

In the Findings and Conclusions, this Court *sua sponte* raised the issue of whether judgment should enter in favor of J.P. Morgan Chase Bank, N.A. based on the merger of Bank One into J.P. Morgan Chase Bank, N.A. Pursuant to Rule 25(c) Fed.R.Civ.P. [Fed. R. Bankr.P. 7025] the Plaintiff could move to substitute J.P. Morgan Chase Bank, N.A. for Bank One as a party in this proceeding. No such motion was made until Plaintiff's Motion to Amend.

In open court on September 26, 2006 counsel for Bank One said that he did not object to entry of judgment against J.P. Morgan Chase, N.A. (without prejudice, of course, to his opposition to any adverse ruling). (Trial Tr., 3–4, Sept. 26, 2006.) Based on this record, the Plaintiff's Motion to Amend is treated as a motion to substitute J.P. Morgan Chase Bank, N.A. for Bank One that is granted, an order to substitute J.P. Morgan Chase Bank N.A. as defendant will be entered, and judgment against that "Bank" as referred to earlier and herein will therefore enter against J.P. Morgan Chase Bank, N.A.

**II. *In Count VII, Damages Awarded Against Bank Based on its Violation of its Duties under U.C.C. § 9–207 Should Not Be Increased, and Union Industrial Will Be Dismissed***

**A. *Damages Against Bank***

In the Motion to Amend, the Trustee moved to increase the actual damages based upon Bank One's breach of duty under U.C.C. § 9–207 from $1,200,000 to $8,224,858.50 plus interest through the date of judgment, claiming that the damages had been miscalculated. (Mot. to Amend 11.) The Trustee argued that "[t]he prima facie measure of damages in an action for the conversion of a promissory note is the amount which the maker of

the note agreed to pay with interest," and that this doctrine should be applied to this case.

However, the asserted measure of damages in cases of conversion do not apply in this case because no "conversion" of the Grupo Serla Note occurred. As was previously found, Bank One owned the Grupo Serla Note and the exclusive right to its possession. Goss did not have any right to obtain ownership and possession of the Grupo Serla Note from its holder without first tendering a payment of the final balance due, approximately $1.5 million, thereby redeeming the Note.

■ Under Illinois law, the essence of conversion is the wrongful deprivation of a right held by one who has a right to immediate possession of the property in issue. *Horbach v. Kaczmarek*, 288 F.3d 969 (7th Cir.2002). Since Goss, as debtor or debtor-in-possession, did not tender the requisite $1.5 million to the Bank, the Trustee failed to establish that Goss or the bankruptcy estate had at any time an immediate right to possession of the Grupo Serla Note, an essential element to an action based on conversion. The Trustee's request for an increase in damages awarded based on the Bank's violation of duties under U.C.C. § 9–207 is therefore denied.

**B. *Union Industrial Is Not Liable Under Count VII For Damages Under U.C.C. § 9–207***

■ Pursuant to U.C.C. § 9–207, "a secured party shall use reasonable care in the custody and preservation of collateral in the secured party's possession. In the case of chattel paper or an instrument, reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed." In this case, as discussed in the earlier Findings and Conclusions, the Bank was the secured party in possession of the Grupo Serla

Note. The Bank, therefore, owed a duty to Goss to use reasonable care in protecting the Grupo Serla Note. By selling it to Union Industrial, the Bank clearly violated this duty. That duty, however, did not extend to Union Industrial as it was not the secured party in the transaction. Therefore, Union Industrial will not be found to have violated its duty to Goss under U.C.C. § 9–207, and judgment will be entered in its favor on Count VII.

**III. *Additional Conclusions as to Count VIII***

**A. *Union Industrial Collaborated with the Bank in Violating the Automatic Stay***

■ In the Motion to Amend, the Trustee argues that there is sufficient evidence to enter a judgment against Union Industrial in Count VIII for its willful violation of the automatic stay in collaboration with the Bank. That part of the Motion will be sustained. Based on the original and the Additional Findings and Conclusions, judgment will enter jointly and severally against Bank One and Union Industrial for their joint and willful violation of the automatic stay, 11 U.S.C. § 362.

Union Industrial accepted transfer of Goss' interest in the Grupo Serla Note ("Note") by purchasing it from the Bank. As was previously reasoned based on precedent and the broad application of 11 U.S.C. § 541, Goss clearly had a property interest in its right to redeem the Note when Union Industrial negotiated its purchase from the Bank, an interest thwarted by the Note purchase.

■ Upon filing of a bankruptcy petition, the automatic stay arises as a matter of law. 11 U.S.C. § 362(a). Section 362(a)(3) states that a filing of a petition for relief under the Bankruptcy Code serves as an automatic stay of "any act to

obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). "The stay of section 362 is extremely broad in scope and . . . applies to almost any type of formal or informal action taken against the debtor or the property of the estate." Collier on Bankruptcy, 362.03 at 362–12.12 (15th ed. rev.2005). It is clear from the plain language of § 362 that the automatic stay "operates as a stay, applicable to all entities" and is not only restricted to creditors of the debtor. 11 U.S.C. § 362(a). Therefore, while Union Industrial was not a creditor of the Debtor, it nonetheless can be found in violation of the automatic stay.

▆▆ Section 362(h) provides damages for "willful" violations of the stay. 11 U.S.C. § 362(h).[2] A willful violation of the stay does not require specific intent to violate the stay. *In re Bloom,* 875 F.2d 224, 227 (9th Cir.1989). A party can be subject to liability under § 362(h) if it engages in conduct which violates the automatic stay, with knowledge that a bankruptcy petition had been filed. *In re Roete,* 936 F.2d 963, 965 (7th Cir.1991).

▆▆ In determining whether a stay violation was willful, it is irrelevant whether the party believed in good faith that it had a right to the property at issue. *In re Ramirez,* 183 B.R. 583, 589 (9th Cir.1995) (multiple citations omitted). "Not even a good faith mistake of law or a legitimate dispute as to legal rights relieve a willful violator of the consequences of his act." *Id. See also Fleet Mortgage Group, Inc. v. Kaneb (In re Kaneb),* 196 F.3d 265, 268–69 (1st Cir.1999); *In re Flack,* 239 B.R. 155, 162 (Bankr.S.D.Ohio 1999); *In re Steenstra,* 280 B.R. 560, 567–68 (Bankr. D.Mass.2002).

By applying the foregoing to the present case, it is evident that Union Industrial as well as the Bank was in willful violation of the stay. By purchasing and then accepting delivery of the Grupo Serla Note, Union Industrial joined the Bank in impairing a property interest of the estate.

Moreover, it acted while knowing of the pending bankruptcy filed by the Debtor. Evidence showed that Union Industrial was aware that Goss filed for bankruptcy protection and was thus protected by the automatic stay. O'Connor, the lawyer who negotiated the sale of the Grupo Serla Note to Union Industrial on behalf of Union Industrial, testified at trial that he did so pursuant to the instructions of Guarneros. (Trial Tr., 83–84, Sept. 29, 2005.) Guarneros, in negotiating the sale on behalf of Union Industrial was aware that Goss was in bankruptcy. The email sent from Adams to Guarneros clearly supports this finding. (Pl.Ex. 59.) Nevertheless, despite being well aware of Goss' bankruptcy, Guarneros acting on behalf of Union Industrial negotiated a sale of the Grupo Serla Note without seeking court permission or giving notice to appropriate parties as required in bankruptcy when seeking to modify stay.

Union Industrial thereby collaborated with Bank One in impairing Goss' interest in the Grupo Serla Note. Because the actions of both destroyed Goss' value and interest in the Grupo Serla Note, it is responsible along with the Bank for violating the automatic stay. Union Industrial assisted in causing the same damages that were caused by Bank One and shared with the Bank an indifference to the economic harm it was causing to a debtor in bankruptcy.

---

**2.** In 2005, the Bankruptcy Code was substantially revised, and § 362(h) was modified and relabeled § 362(k)(1). This opinion will refer to the section as § 362(h), the prior version of the statute in effect at times of the activities violating the stay.

Under Count VIII of the Complaint, Union Industrial collaborated with Bank One in willful violation of the automatic stay and therefore judgment will separately enter against Bank One and Union Industrial jointly and severally in that amount of actual damages consisting of $1,200,000 plus $100,000 in punitive damages, plus attorney fees and expenses.

**B. *The Punitive Damages Award of $100,000 Will Not Be Increased***

■ This Court awarded the Trustee $100,000 in punitive damages against the Bank and now also against Union Industrial because of their violation of the automatic stay. Those parties each acted with indifference to the harm caused to Goss' property interest while it was in bankruptcy. In his Motion to Amend, the Trustee argued that the punitive damages therefore awarded should be increased. He relies on cases that assessed the Constitutional limits for punitive damages, involving liability for conduct usually causing terrible human or financial harm.

It has been said that if every problem looks like a nail, then every solution looks like a hammer. The stay violation found here, while serious, did not fall into the range of cases warranting the highest possible punitive punishment. This case does not warrant the hammer.

Supreme Court authority has held that the most significant factor a court should consider in assessing punitive damages is the degree of reprehensibility of the defendant's conduct. *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 575, 116 S.Ct. 1589, 1599, 134 L.Ed.2d 809 (1996). Specific factors to consider in determining reprehensibility have been indicated:

We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic;

the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident

*State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 419, 123 S.Ct. 1513, 1521, 155 L.Ed.2d 585 (2003).

■ Seventh Circuit precedent has held that in determining the amount of punitive damages the Court should consider the following: (1) the nature and enormity of the wrong; (2) the financial status of the defendant; and (3) the potential liability of the defendant resulting from multiple claims. *Republic Tobacco Co. v. North Atlantic Trading Co., Inc.,* 381 F.3d 717, 735 (7th Cir.2004). "It is vital that each case be carefully assessed in light of the specific facts involved, and the ultimate determination should be governed by the circumstances of each particular case." *Ross v. Black & Decker, Inc.,* 977 F.2d 1178, 1189 (7th Cir.1992).

■ An award of punitive damages is appropriate in certain cases to punish a wrongdoer for outrageous conduct and to deter others from engaging in similar conduct. *Hennessy v. Penril Datacomm Networks, Inc.,* 69 F.3d 1344, 1352 (7th Cir. 1995). A reckless or callous disregard of rights, amply shown here in Count VIII, is sufficient to support imposition of punitive damages. *In re Bloom,* 875 F.2d 224, 228 (9th Cir.1989).

■ While the Trustee stresses that the wealth of the Bank should be given great weight when determining an appropriate amount of punitive damages, a defendant's wealth alone is not a sufficient basis for awarding punitive damages. *Mathias v. Accor Economy Lodging, Inc.,*

347 F.3d 672, 677 (7th Cir.2003) (noting that "[t]hat would be discriminatory and would violate the rule of law .... by making punishment depend on status rather than conduct") (citations omitted).

The Trustee relies on a number of cases to support his conclusion that Seventh Circuit precedent supports a ruling that punitive damages should amount to about one percent of defendants' worth, suggesting that because the Bank has a substantial net worth the punitive damages should be increased accordingly. (Tr. Supp. Brief p. 3.)

However, the cases cited by the Trustee in which large amounts of punitive damages were awarded involved enormous wrongs that usually caused great harm. The Trustee cites cases involving fraud and deceit;[3] conversion and libel;[4] mass torts involving asbestos exposure;[5] a helicopter crash;[6] a defective IUD;[7] as well as the explosion of a shotgun.[8]

The Bank and Union Industrial were each certainly indifferent to the economic harm they were knowingly and deliberately causing a debtor in bankruptcy, and they were callously indifferent to their duty under 11 U.S.C. § 362. But their behavior did not rise to the level of outrageous and harmful behavior that warrants an award in the range of the Constitutional maximum allowable as punitive damages. In this case, punitive damages are warranted against those defendants because of their callous indifference to bankruptcy law, and because the award will serve to deter parties in other cases who are tempted to play the same game. One purpose for award of punitive damages is to deter future misconduct. *Dang v. Cross,* 422 F.3d 800, 801 (9th Cir.2005). The $100,000 award is sufficient to accomplish that purpose.

## C. *Attorneys' Fees and Expenses Recoverable Under The Trustee's Counsel's Contingent Fee Agreement Constitutes the Trustee's Actual Damages*

### 1. *The Contingent Fee Agreement*

After review of fee applications filed by Trustee's counsel on October 24, 2006, counsel were ordered to argue "the effect of the contingency fee agreement under which Plaintiffs counsel were approved to serve." This question was applicable to Plaintiff's request for recovery in Court VIII of "actual" damages for violation of 11 U.S.C. § 362(h).

On August 27, 2003, the Trustee had filed his Application to Employ Nisen & Elliot as Special Counsel (the "Retention Motion") requesting approval of a contingency fee arrangement pursuant to Sections 327, 328, and 329 of the Bankruptcy Code.

Pursuant to § 328(a) of the Bankruptcy Code, a trustee (or a committee appointed under § 1102):

> ...with the court's approval, may employ or authorize the employment of a professional person under section 327 or

---

3. *Gass v. Gamble–Skogmo, Inc.,* 357 F.2d 215 (7th Cir.1966).

4. *Professional Seminar Consultants, Inc. v. Sino Am. Tech. Council, Inc.,* 727 F.2d 1470 (9th Cir.1984).

5. *Jackson v. Johns–Manville Sales Corp.,* 781 F.2d 394 (5th Cir.1986).

6. *Bemer Aviation, Inc. v. Hughes Helicopter, Inc.,* 621 F.Supp. 290 (E.D.Penn.1985).

7. *Kociemba v. G.D. Searle & Co.,* 707 F.Supp. 1517 (D.Minn. Feb.16, 1989).

8. *Loitz v. Remington Arms Co., Inc.,* 177 Ill. App.3d 1034, 127 Ill.Dec. 262, 532 N.E.2d 1091 (4th Dist.1989).

1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including...on a contingent fee basis.

11 U.S.C. § 328(a). An Order was entered herein on September 4, 2003 approving the Retention Motion. That Order provided:

[T]hat Nisen & Elliott shall be compensated and reimbursed in respect of its fees on a contingency fee basis in the manner designated in the Application with all costs, expenses, and disbursements to be paid by the Bankruptcy Estate; i.e. Nisen & Elliott ("Nisen") shall be entitled to receive fees equal to thirty-seven percent (37%) of any funds the Bankruptcy Estates receive as result of the Causes of Action prosecuted by Nisen, provided that Nisen shall be entitled to a forty percent (40%) recovery if any of the above is appealed (either on appeal, or after an appeal to the District Court and/or any Court of Appeals).

(Order, Sept. 4, 2003.)

Under these circumstances, where a contingency fee agreement is pre-approved by an order, § 328(a) provides that the agreement can be changed at a later date only if a high standard is met to justify a change. Section 328(a) provides:

[T]he court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident *in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.*

11 U.S.C. § 328(a). (Emphasis supplied.)

The § 328(a) standard is indeed a demanding one. *F.V. Steel and Wire Co. v. Houlihan Lokey Howard & Zukin Capital, L.P.*, No. 05C1297, 2006 WL 2583427, at *4 (7th Cir.2006) (citing *In re Yablon*, 136 B.R. 88, 92 (Bankr.S.D.N.Y.1992)) (stating that "the requirement of 'improvi-dence in light of developments not capable of being anticipated at the time' makes it difficult, as a practical matter, for a court to vary the compensation even when it thinks that it was improvident at the outset") (quoting *In re C & P Auto Trans.*, 94 B.R. 682, 686 n. 5 (Bankr.E.D.Cal.1988)); *see also In re Barron*, 325 F.3d 690, 693 (5th Cir.2003) (noting the limitations on bankruptcy courts' ability to revise pre-approved fee arrangements and stating that it is not enough that the developments that made the plan improvident were merely unforeseen, they had to have been incapable of being anticipated).

Neither the Trustee nor his counsel have shown that the work of counsel was not covered by the contingency fee agreement. Nor have they requested relief to allow compensation in an amount different from the contingency fee arrangement and certainly have not met the test to vary that arrangement under § 328(a). Instead, they argue that the approved contingency fee agreement is irrelevant for purposes of calculating "actual" damages under § 362(h). In a footnote, they have said the following: "Moreover, upon reflection, if this Court were to incorrectly accept Bank One's newfound and unsupported arguments, a court could find that this new application of law was not capable of being anticipated at the time of entering into the contingent fee agreement." (Reply to Bank One's Mem. Concerning Entry of J., 6, n. 4.) This tends to argue that they could not have anticipated the wording of 11 U.S.C. § 362(h), now 11 U.S.C. § 362(k), which awards "actual" damages. That was part of the Bankruptcy Code at the time work was done, and that kind of argument borders on the frivolous.

### 2. Contingent Attorneys' Fees Are a Component of Actual Damages under § 362(h)

■ For purposes of awarding damages for a willful violation of the automatic

stay, fees are controlled by § 362(h) which provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). Only "actual" expenses may be recovered, including actual attorney fees. In the instant case, the Trustee's actual attorneys' fees will be the amount to be paid under the pre-approved contingency fee agreement. They have not demonstrated any right to recover more, and on this record the contingent fee is all that the Trustee is obliged to pay. Contingent fees are properly held to represent a party's actual damages resulting from obligations to pay attorneys. *Gotro v. R & B Realty Group*, 69 F.3d 1485, 1488 (9th Cir.1995). Since the Bank's counsel has made clear that an appeal of the judgment to be entered against it will be filed, the Trustee's counsel will be entitled to receive 40% of the total judgment awarded as calculated below.

The Trustee argues, however, that in determining attorneys' fees the "lodestar" method ordinarily used in determining the reasonableness of fees sought pursuant to § 330 of the Bankruptcy Code should be used. The Trustee cited the following cases for support: *In re Roman*, 283 B.R. 1 (9th Cir. BAP 2002); *United States v. Price*, 176 B.R. 807, 808 (N.D.Ill.1993), *aff'd*, 42 F.3d 1068 (7th Cir.1994); *Sucre v. MIC Leasing Corp. (In re Sucre)*, 226 B.R. 340, 351 (Bankr.S.D.N.Y.1998); *In re Price*, 179 B.R. 70, 71 n. 2 (Bankr.S.D.Ohio 1995).

These opinions are easily distinguished from the facts at hand, as none of them involved situations where counsel was retained pursuant to a contingency agreement or where counsel was retained pursuant to 11 U.S.C. § 328.

The Trustee further relies on *Venegas v. Mitchell* for the proposition that despite existence of a contingency fee agreement, attorney fees may be awarded in excess of what counsel can receive under the contingency fee agreement, 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990). He also cites *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986); *Riverside v. Rivera*, 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986); *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984).

Those cases cited by Trustee are not applicable to the facts of this case. In *Venegas*, a prevailing civil rights plaintiff sought to prevent his former attorney from collecting a contingent fee in an amount substantially larger than the fee awarded for the case by the court under Title 42 U.S.C. § 1988. 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990). Venegas argued that the fees awarded under § 1988, to be paid by the defendant, precluded his attorney from collecting a larger fee from him under their private contingency agreement. The Supreme Court held, however, that § 1988 did not render contingent fee agreements between successful civil rights plaintiffs and their attorneys invalid.

*Venegas* involved the award of attorney's fees pursuant to federal civil rights law 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of [certain federal civil rights statutes], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs...."). That precedent has no relevance to this case. The present case is not one that involves civil rights or one in which "reasonable" damages are being awarded pursuant to 42 U.S.C. § 1988 or

similar statute. Here the issue is the amount of "actual" fees imposed on a debtor (or, as here, on the Trustee) by conduct in violation of 11 U.S.C. § 362. Similarly, the other cases relied on by the Trustee, *Riverside v. Rivera* and *Blum v. Stenson,* involved attorneys' fees in civil rights cases, and as such, are not applicable here.

One opinion, explained very well the important distinction to be made about fees in civil rights cases:

> Frequently, the actual damages to a plaintiff in a civil rights case may be a relatively small amount, notwithstanding a finding that the plaintiff's constitutional rights have been violated. If plaintiff's attorneys are precluded from recovering hourly fees because such fees are greater than the contingency amount or the jury award of damages, it would make it extremely difficult for plaintiffs in such cases to ever find an attorney to represent them, even if their constitutional rights clearly have been violated.

*Darbyshire v. Garrison,* No. 04–CV–72272, 2006 WL 581032, at *2 (E.D.Mich. March 8, 2006). The same considerations are not present here.

The Trustee also cited *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986). In that case, a citizens group successfully brought an action under the Clean Air Act and moved for a statutory award of attorneys' fees and costs. Fees were determined under § 304(d) of the Clean Air Act which provided that "in any action" to enforce the Act the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." *Id.* Those statutory standards governing cases involving the Clear Air Act are not applicable here.

Attorney fees in this case are not to be awarded under 42 U.S.C. § 1988 or § 304(d) of the Clean Air Act or under any statute other than the Bankruptcy Code. Pursuant to 11 U.S.C. § 362(h), the Trustee is entitled to "recover actual damages, including costs and attorneys' fees ..." Section 362(h) does not provide that reasonable attorney fees will be awarded. Rather, the statute explicitly and plainly provides that the Trustee is entitled only to "actual" damages. 11 U.S.C. § 362(h).

On November 7, 2006 Plaintiff filed a Second Supplement in Support of Application for Fees to Be Included in Judgment Against Bank One ("Second Supplement"). In the Second Supplement the Trustee cited *Dawson v. Washington Mutual Bank (In re Dawson),* 346 B.R. 503, 514–18 (Bankr.N.D.Cal.2006) in response to this Court's inquiry of whether counsel for the Trustee could cite any authority in which the lodestar method for awarding attorneys' fees under § 362(h) was applied despite a court pre-approved contingent fee agreement pursuant to § 328. *Dawson* is not *stare decisis* binding judges of this District, and it is not applicable to decide the present issue.

*Dawson* involved retention of counsel by an individual debtor. While the opinion made reference to the fact that the services during part of the representation were provided on a contingent fee basis, the contingent fee agreement was not approved by the Court in advance. In fact, it was noted, "The nature of the agreement has not been explained: i.e., whether recovery was to be had on a percentage basis from any award or whether fees could only be recovered based on any amount of fees awarded by the Court." 346 B.R. at 516.

Moreover, in *Dawson,* the bank in that case contended that no fees could be recovered under § 362(h) for legal work per-

formed by the attorneys retained by the debtor, on the ground that during part of the representation the attorneys' services were performed on a contingent basis. The thrust of the opinion was to reject that argument, considering the contingent fee in context of the particular facts and issues presented in that case. The opinion did not hold that contingent fee agreements would not generally cap fees to be recovered under § 362.

### D. *A Civil Contempt Order Will Not Be Entered As A Separate Judgment Against The Bank*

At a hearing in this matter on October 31, 2006, the Trustee tendered a draft judgment order that included a separate judgment proposed against the Bank for civil contempt.

The Bank argues that this request is improper. It reasons that Fed. R. Bankr.P. 9020 requires that a motion for contempt brought by a party in interest, such as the Trustee, follow applicable notice, service, and discovery requirements. *See also* Fed. R. Bankr.P. 9014. Further, Local Bankruptcy Rule 9020–1 includes additional, specific requirements for commencing contempt proceedings, whether such proceedings are commenced on the Court's own initiative or by a party in interest. Local Rule 9020–1 requires, among other things, that a proceeding to adjudicate a person for civil contempt of court for conduct outside presence of the court be commenced either on the court's own motion by order to show cause, or motion by a party in interest. Local Rule 9020–1(A)(1). A motion for civil contempt must also be accompanied by an affidavit, setting forth the grounds for contempt and damages. Local Rule 9020–1(A)(2).

Bank One argues that in this case, the requirements of Fed. R. Bankr.P. 9020, Local Rule 9020–1 and due process of law

have not been met for several reasons: (1) no order to show cause has been issued by this Court against Bank One; (2) the Trustee did not file a motion for civil contempt of court (or even include a count for civil contempt in its Complaint against Bank One); and (3) no allegation or mention of contempt was made in the Trustee's pretrial proposed Findings and Conclusions or during the entire six week trial of this action.

For the same reasons, the Bank objects to reasoning in the original Conclusions of Law opinion holding in the alternative that the corporate parties who violated the stay can either be found to be "individuals" bound under 11 U.S.C. § 362(h) (now § 362(k)) or be found to have committed acts in civil contempt of the automatic stay.

The Bank and Union Industrial were put on notice to defend themselves in Count VIII for violating the automatic stay, and redress was sought in this Adversary by the Trustee. Notice of that claim, under federal pleading jurisprudence and Seventh Circuit "notice pleading" precedent, was sufficient to give those defendants notice that any theory seeking recovery for violating the stay injunction under 11 U.S.C. § 362 would be applicable.

Under federal "notice" pleading requirements, pleadings need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). "Notice" pleading merely requires that the plaintiff give notice to the defendant of the claims alleged and basic facts supporting those allegations. *Maclin v. Paulson,* 627 F.2d 83, 86 (7th Cir.1980). Federal pleadings should therefore be liberally construed. *Sutliff, Inc. v. Donovan Cos.,* 727 F.2d 648, 653 (7th Cir.1984). So long as fair notice has been given and the court can glean an

actionable claim from the complaint, the court must entertain the party's case. *See American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 723 (7th Cir.1986).

▮ Under Seventh Circuit standards, pleaders in a notice system do not have any obligation to plead legal theories. *McDonald v. Household Intern., Inc.*, 425 F.3d 424, 427 (7th Cir.2005). "The point of a notice pleading standard is that the plaintiff is not required to plead either facts or legal theories." *Hefferman v. Bass*, 467 F.3d 596, 598–99 (7th Cir.2006). Under the notice-pleading standard, the plaintiff must allege only enough to put the defendants on notice and enable them to respond. *McElroy v. Lopac*, 403 F.3d 855, 858 (7th Cir.2005). The Bank's argument that contempt may not be punished unless the precise procedures are followed under Fed. R. Bankr.P. 9020 and local rules is therefore misplaced. Those procedures are required as a way of satisfying due process requirements for notice and opportunity to be heard. But defendants to Count VIII had such rights through this litigation.

▮ Moreover, it must be observed that federal courts are held to have inherent powers to sanction for contempt. *See Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1575 n. 9 (11th Cir.1995) (discussing the modern origin of the inherent powers doctrine in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), provided adequate due process notice of possible sanction is given).

Therefore, it has been said that while Fed. R. Bankr.P. 9020 provides a benchmark against which to measure a respondent's due process rights to notice and opportunity to be heard, that Rule need not always be followed in order to invoke a court's contempt power. *In re Williams*, 191 B.R. 497, 502 (Bankr.M.D.Ga.1996).

It was found in the Findings and Conclusions that the Trustee is entitled to actual damages based on willful violation by Defendants to Count VIII of the automatic stay, either under 11 U.S.C. § 362(h) or in the exercise of the civil contempt power. The original Conclusions further stated in language now also applicable to Union Industrial that pursuant to Defendants' willful violation of the automatic stay and for reasons stated, judgment will separately enter in favor of Trustee for $1,200,000 in actual damages plus $100,000.00 in punitive damages plus fees and expenses (each due to counsel under the contingent fee agreement) as additional actual damages.

The Findings and Conclusions as now Amended have sufficiently described the reasons for which judgment will separately enter on Count VIII. "A judgment should omit reasons and collateral matters and provide only the relief to which the prevailing party is entitled." *TDK Electronics Corp. v. Draiman*, 321 F.3d 677, 679 (7th Cir.2003) (*citing e.g., Paganis v. Blonstein*, 3 F.3d 1067, 1071 (7th Cir. 1993); *Reytblatt v. Denton*, 812 F.2d 1042, 1043–44 (7th Cir.1987)); Fed.R.Civ.P. 58. Therefore, the judgment order to be entered in Count VIII will omit the reasons for this Court's ruling and omit any reference to the exercise of civil contempt power as an alternative ground for the judgment. Instead the judgment will only provide the dollar judgment relief to which the Trustee is entitled.

## IV. *Judgment Orders*

Plaintiff submitted an Application for Attorney Fees and Expenses for Inclusion in the Judgment Against the Foreign Defendants wherein counsel for the Chapter 7 Trustee seeks fees in the amount of $376,818.50 and expenses in the amount of $715.04. Plaintiff also submitted an Appli-

cation for Attorney Fees and Expenses for Inclusion in the Judgment Against Bank One and Union Industrial wherein counsel for the Chapter 7 Trustee seeks fees in the amount of $771,865.00 and expenses in the amount of $37,018.91.

### A. *Calculation of Fees and Expenses Awarded to the Trustee Based on Violation of Automatic Stay by Bank One and Union Industrial (Count VIII)*

 Under the fee agreement entered into by prevailing counsel, they are entitled to recover their litigation expenses from the Trustee. That will be an additional "actual" damage to the Trustee under 11 U.S.C. § 362(h).

The Bank argued that the Trustee's proposed allocation of expenses is not fair and reasonable. It objects to the proposed allocation of expenses based on the following: (1) the Trustee seeks award of 98% of the total claimed expenses in Count VIII against the Bank and Union Industrial and only 2% against Grupo Serla, Editorial Comercial, and Guarneros; (2) the Trustee seeks to have all expenses for court reporter fees for trial transcripts, copies of documents, expenses incident to depositions and computerized legal research charged in Count VIII; and (3) the proposed allocation disregards the fact that substantial portions of deposition and trial testimony dealt with the Trustee's claims against Grupo Serla, Editorial Comercial, and Guarneros which were separate and distinct from the claims in Count VIII. The Bank argues that all expenses should be divided equally between Count VIII and the other judgment Counts.

Many of the expenses did indeed have dual use to prosecute Count VIII and also Counts I, II, and III. Allocating expenses to one Count or another cannot perfectly be done. Taking into account the Bank's

objections and the fact that the heaviest litigation dealt with Count VIII, it is appropriate to allocate only two-thirds (2/3) of the $37,018.50 in expenses claimed in Count VIII against Bank One and Union Industrial jointly and severally (thereby amounting to $24,680 in expenses) and one-third (1/3) of those expenses to the Foreign Defendants.

Pursuant to 11 U.S.C. § 362(h), Plaintiff is entitled to "recover actual damages, ... including attorneys' fees." The contingency agreement, pursuant to which counsel for the Trustee, Nisen & Elliott, was employed provided that Nisen & Elliott "shall be entitled to a forty percent (40%) recovery if any of the above is appealed (either on appeal, or after an appeal to the District Court and/or any Court of Appeals)."

Bank One expressed its intention to appeal this decision. If the judgment is affirmed on appeal, the Plaintiff will certainly be able to collect against the Bank. Therefore, the Trustee is entitled to forty percent (40%) of damages awarded. He is therefore entitled to recover $1,300,000 ($1,200,000 plus $100,000 in punitive damages) plus expenses of $24,680, for a total of $1,324,680. Bank One and Union Industrial will therefore be jointly and severally liable to the Trustee for attorneys' fees in the amount of 40% × $1,324,680 or $529,872.

In sum, Bank One and Union Industrial will be jointly and severally liable in Count VIII for the following:

| | |
|---|---|
| Damages | $1,200,000 plus expenses of $24,680 |
| Attorneys' Fees | $ 529,872 |
| Punitive Damages | $ 100,000 |
| **TOTAL** | $1,854,552 |

### B. *Fees Awarded to the Trustee Based on Breach by Foreign Defendants (Counts I, II, and III)*

Editorial Comercial, Grupo Serla, and Guarneros failed to pay Goss amounts due under the Grupo Serla Note and the Sale

and Purchase Agreement. As such, they were found liable to the Trustee for damages pursuant to Counts I, II, and III of the Complaint and it was held that a separate judgment would enter finding them jointly and severally liable for the balance due and owing on the Grupo Serla Note plus interest accruing thereon until this trial began for a total then standing at $9,724,858, plus further contract interest to date.

The Sale and Purchase Agreement provided that the "Purchaser shall reimburse Seller for its reasonable expenses relating to reselling and the like, and for the reasonable attorneys' fees and legal expenses incurred by the Seller ..." (Pl.Ex. 2, ST 1057.)

In the Application for Attorney Fees and Expenses for Inclusion in the Judgment Against the Foreign Defendants, counsel for the Chapter 7 Trustee sought fees in the amount of $376,818.50 and expenses in the amount of $715.04. Upon submission of this Application, these Defendants through their counsel posed no objection thereto. In the absence of any apparent miscalculation thereof, Editorial Comercial, Grupo Serla, and Guarneros will be jointly and severally liable for attorneys' fees in the submitted amount of $376,818.50 and the submitted expenses of $715.04. In addition, based on the revised allocation of expenses that were submitted in the Application for Attorney Fees and Expenses for Inclusion in the Judgment Against Bank One, one-third (1/3) of those expenses, $12,340, will be included in the expenses owed jointly and severally by Editorial Comercial, Grupo Serla, and Guarneros.

The Plaintiff has calculated without objection (filing November 20, 2006) that the total amount due and owing on the Grupo Serla Note based on daily interest to No-vember 20, 2006, as $10,415,115 plus daily interest of $1,568.77 thereafter.

In total, Editorial Comercial, Grupo Serla, and Guarneros will be jointly and severally liable for the following:

| | | |
|---|---|---|
| Damages | $10,415,115 | plus interest at $1,568.77 daily after November 20, 2006 until judgment is entered |
| Attorneys' Fees | $376,818.50 | |
| Expenses | $ 13,055 | ($715 + $12,340) |
| **TOTAL** | **$10,804,998** | plus interest as stated above |